## NATIONAL LABOR RELATIONS BOARD v. PINKERTON'S NAT. DETECTIVE AGENCY, Inc. et al.

### No. 12861.

United States Court of Appeals
Ninth Circuit.

Jan. 29, 1953.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Dominick L. Manoli and Maurice Alexander, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Roth & Bahrs, San Francisco, Cal., for respondent Pinkerton's Nat. Detective Agency.

Before STEPHENS and POPE, Circuit Judges, and HARRISON, District Judge.

POPE, Circuit Judge.

We are asked to enforce an order of the petitioning Board issued against the respondent Detective Agency, here referred to as the Company, and the respondent Organizing Committee, here called the Union. The Union made no appearance here.

The Board determined on findings which were not challenged by the Company that the latter discriminated against several of its employees in violation of § 8(a) (3) of the National Labor Relations Act as amended,[1] by refusing employment to them

1. At the time in question the section read as follows: "Sec. 8(a). It shall be an unfair labor practice for an employer— * * * (3) by discrimination in regard to hire or tenure of employment * * * to encourage or discourage membership in any labor organization: Provided, That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day fol-

on account of their failure to maintain good standing in the Union. (The Board found there was no valid union-security agreement between the Company and the Union). It also determined that the Union caused the Company thus to refuse employment, and that in so doing the Union violated § 8(b) (2) of the Act. In addition it held the Union guilty of violating § 8 (b) (1) (A).[2] The Board's order, in addition to requiring the respondents to cease and desist from the practices referred to, required the Company to reinstate the discharged employees. It further provided that the Company and the Union "shall, jointly and severally, make whole [three named employees] for any loss of pay they may have suffered because of the discrimination against them, by payment to each of them of a sum of money equal to the amount they normally would have earned", less their net earnings in the period of the layoff.

The discriminatory layoffs occurred when the Company acceded to the demand of the Union that it honor the provisions of a union security contract which the Board found repugnant to the Act because it had not been authorized by an election and because it required new employees to join the Union within fifteen days, instead of thirty days, as required by the Act. The evidence disclosed, without conflict, that the Company protested to the Union that the contract was void, that the layoffs would cause it and the Union trouble with the Board, but the Union called a strike to force the Company to discharge these men, and finally, in consequence of this pressure it yielded.

The Company's contention here is that under these circumstances the Board was without authority to require the Company, as well as the Union, to make the employees whole for loss of pay. Its argument is based upon that part of § 10(c) of the Act which reads as follows: "Provided, that where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him * * *." This provision, the Company claims, makes the party *responsible* for the discrimination liable for the back pay. Here, it says, the evidence discloses, without question, that the Union alone was responsible; and that in view of the fact that the Company acted only under Union coercion makes a finding that it, as well as the Union, was "responsible for the discrimination", within the meaning of the quoted clause, wholly unwarranted.

The Company, in its brief, concedes that both it and the Union violated the statute. It concedes that the courts of appeals have generally held that under the circumstances here shown the employer may be ordered to reinstate the wronged employee, and this notwithstanding the employer acted under union coercion.[3] But, says the Company, an order establishing liability for back pay

---

lowing the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective-bargaining unit covered by such agreement when made; and (ii) if, following the most recent election held as provided in section 9(e) the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement". 61 Stat. 140.

**2.** "§ 8 * * * (b) It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: Provided, That this paragraph shall not impair the right

of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; * * *."

**3.** See, for example, National Labor Relations Board v. Star Publishing Co., 9 Cir., 97 F.2d 465, 470; National Labor Relations Bd. v. Oertel Brewing Co., 6 Cir., 197 F.2d 59, 62.

must be based upon the quoted statutory language, and upon that alone. And this language, we are told, can mean only that back pay may be required of *either* the employer or the union, depending upon which is responsible for the discrimination.[4] If it were the intent to make both parties liable for back pay merely because both violated the statute, it is argued, the Act would have so stated. In consequence, we are told, in a case where the union has affirmatively caused the discrimination, and the employer has attempted to resist it, the quoted language was not intended to permit the Board to require back pay from both parties.

We are unable to agree with the Company's contention. The particular language here quoted, and upon which it bases its argument, cannot be read except in conjunction with the remainder of the Act. We note the other provisions which require a holding that under the circumstances here found, the Company as well as the Union, has violated the statute. Both have done acts which have brought about discrimination. All these provisions, including the one here quoted, must be read together, and so read to authorize the Board to hold that this unlawful conduct is such that each and both are "responsible for the discrimination". Thus in National Labor Relations Board v. Newspaper & Mail. Del. Union, 2 Cir., 192 F.2d 654, at page 656, the court said:

"It is also argued that the Board cannot order both the Union and Hearst to compensate these individuals jointly and severally. We are in accord with the holding in Union Starch and Refining Company, [v. N. L. R. B.,] 7 Cir., 186 F.2d 1008, that the Board may impose such joint and several liability when both the Union and the employer have engaged in the discriminating practices. It is further argued that Hearst cannot be found guilty of violating the Act or be ordered to compensate injured employees because it engaged in such practices only under union coercion, threats of strikes, and actual strikes. Economic coercion is no excuse for violating the Act; we have already so decided in similar situations. N. L. R. B. v. National Broadcasting Co., 2 Cir., 150 F.2d 895, 900."

▇▇▇ We think this makes sense. Clearly, it was within the authority of the Board to conclude that an employer, which, notwithstanding it acts under union coercion, is yet guilty of a violation of the statute in thus discriminating against an employee, is thereby "responsible for the discrimination" and liable, as here, for the back pay. That such a determination falls within the special competence of an administrative agency such as this Board, and may not be set aside upon judicial review, see Board v. Hearst Publications, 322 U.S. 111, 129, 64 S.Ct. 851, 88 L.Ed. 1170, and Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 86 L.Ed. 301.[5]

Another question which we must decide is one raised for the first time during the oral argument. Before the Board the Company and the Union did not question the Board's position that the Union security contract, here referred to, was invalid for the reasons previously mentioned, nor was the matter discussed in the briefs originally filed here. However, on October 13, 1952, this court handed down its opinion in National Labor Relations Board v. International Association of Heat and Frost Insulators, etc., 9 Cir., 199 F.2d 321. At the

---

4. Cited is the following extract from the Senate Report on the bill which became the Act: "Section 10(c). This subsection is amended by the proviso in two respects: (1) Back pay may be required of either the employer or the labor organization, depending upon which is responsible for the discrimination suffered by the employee." Legislative History, Labor Management Relations Act, 1947, p. 432.

5. "In a matter left specifically by Congress to the determination of an administrative body * * * the function of review placed upon the courts * * * is fully performed when they determine that there has been a fair hearing * * * and an application of the statute in a just and reasoned manner." Gray v. Powell, supra. [314 U.S. 402, 62 S.Ct. 332]

oral argument the attention of counsel was called to the possibility that if the respondents had so contended before the Board, the rule stated in the Insulators case, supra, might require a determination that the contract was a valid one. This is for the reason that the Union security contract, containing terms which would have been valid prior to the enactment of the amended Act, was dated August 1, 1946, and like the closed shop agreement in the Insulators case, had continued in effect by its terms without any renewal or extension by act of the parties until the date of the discharges here involved. The contract in the Insulators case was held valid. The court then posed the question whether the rule of the Insulators case may be relied upon by the respondents here and at this stage of the proceeding. Opportunity was given for the filing of additional briefs upon this question.

It is a bit anomalous for us now to enforce an order based upon the claimed invalidity of a contract which was actually a valid one according to our decision in the Insulators case. The inquiry is whether the situation now presented is similar to that which sometimes confronts an appellate court when it finds that the judgment before it is predicated upon a complaint which clearly states no cause of action.

 Our study of the matter has convinced us that the Act pursuant to which we are hearing this petition establishes a statutory scheme which is quite different. § 10(e), 29 U.S.C.A. § 160(e), provides: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." National Labor Relations Board v. Cheney Lumber Co., 327 U.S. 385, 388, 66 S.Ct. 553, 90 L.Ed. 739, makes it plain that because of this section this particular infirmity in the case as originally made before the Board, may not now be considered by us.

There are also in the record special circumstances which particularly call for the application of that rule here. Following the strike which was called by the Union to force the Company to discharge these employees, the Company and the Union executed a strike settlement agreement which reaffirmed the contract containing the Union security clause which the Board found to be illegal. Had the point here mentioned been raised before the Board, the Board would have had an opportunity to consider whether or not that strike settlement agreement was "a renewal or extension by some act of the parties" [199 F.2d 325] within the meaning of what we said in the Insulators case. Applied to the facts here, the language used by the Supreme Court in Marshall Field & Co. v. National Labor Relations Board, 318 U.S. 253, 256, 63 S.Ct. 585, 586, 87 L.Ed. 744, is particularly apt: "The present case gives emphasis to the salutary policy adopted by section 10(e) of affording the Board opportunity to consider on the merits questions to be urged upon review of its order. * * * Findings with respect to these contentions are an appropriate if not indispensable basis for judicial review of the question sought to be raised. We think section 10(e) makes its presentation to the Board a prerequisite to judicial review."

While § 10(e) quoted above makes an exception of cases involving "extraordinary circumstances", the fact that our decision in the Insulators case was handed down shortly before the oral argument in this court cannot be regarded as such an extraordinary circumstance. We note what was said in Sunal v. Large, 332 U.S. 174, 182, 67 S.Ct. 1588, 91 L.Ed. 1982. There a somewhat similar hardship situation arose in a criminal case because a new, and unexpected but controlling decision had been announced after time for appeal had expired. The same reasons there given why the court declined to treat that circumstance as sufficiently extraordinary to warrant habeas corpus, apply here. Hence, a remand to the Board for consideration of a new objection or of new evidence would not be appropriate. National Labor Relations Board v. Mexia Textile Mills, 339 U.S. 563, 569, 70 S.Ct. 826, 94 L.Ed. 1067.

Order enforced.