**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GIUSTINA BROS. LUMBER CO., Respondent.**

No. 15625.

United States Court of Appeals
Ninth Circuit.

Feb. 28, 1958.

Rehearing Denied May 1, 1958.

Jerome D. Fenton, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, George L. Powell, Arnold Ordman, Maurice Alexandre, Attys., NLRB, Washington, D. C., for petitioner.

Richard R. Morris, Green, Richardson, Green & Griswold, Portland, Or., for respondent.

Before STEPHENS, Chief Judge, and CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

The National Labor Relations Board, pursuant to its power under § 10(e)[1] of the Labor Relations Act of 1947, petitions this Court for enforcement of its order directing respondent Giustina Bros. Lumber Co. to cease and desist from certain unfair labor practices and to reinstate and provide back pay to former employees discriminated against by virtue of said unfair labor practices.

Respondent argues that the entire order should be set aside rather than ordered enforced for the reasons, first, that the facts as found by the Board[2] are not supported by substantial evidence; second, that the Board improperly concluded that respondent had waived a defense based on § 8(d)[3] of the Act.

As to the first argument in opposition to the order, there is no attack on the legal conclusion that the conduct of respondent, if it in fact occurred, constituted unfair labor practices. Our review of this phase of the case is, therefore, narrowly proscribed by § 10(e) to a determination of whether the findings of the Board are supported by substantial evidence on the record considered as a whole. The narrow and limited function of this Court in reviewing an order of the Board is in need of no further judicial exposition.[4]

The Board found that respondent actively participated in a back to work movement after the Union,[5] with which there was a collective bargaining agreement, had commenced an economic strike against the lumber company;[6] that respondent by-passed the Union and made a direct appeal to the workers to abandon the strike and accept a wage offer rejected by the Union; and that respondent threatened strikers with loss of employment if they did not abandon the strike. The Board properly concluded

1. 29 U.S.C.A. § 160(e).

2. In its decision and order, reported at 116 N.L.R.B. 700, the Board stated that it considered the trial examiner's Intermediate Report, the exceptions taken and briefs in support thereof, and the entire record. Having done so, the Board adopted the findings, conclusions and recommendations of the trial examiner. References herein to the findings of the trial examiner are, therefore, references to the Board's findings for the purposes of judicial review under § 10(e) of the Act of 1947.

3. 29 U.S.C.A. § 158(d).

4. See, e.g., Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Carpinteria Lemon Ass'n v. N. L. R. B., 9 Cir., 1957, 240 F.2d 554; N. L. R. B. v. Monroe Feed Store, 9 Cir., 1956, 237 F.2d 116, 117.

5. Lumber and Sawmill Workers, Local Union No. 2611, AFL-CIO.

6. Local 2611 struck as part of an industry wide strike over wage disagreements in the lumber industry of the Pacific Northwest. The strike, initiated in June, 1954, was not terminated until January of the following year.

that such conduct interfered with, restrained and coerced respondent's employees in violation of § 8(a) (1)[7] of the Act. It was further found that respondent refused to negotiate with the Union and unlawfully attempted to terminate its bargaining contract with the Union— conduct violative of § 8(a) (5).[8] Finally, the Board determined that the above conduct converted the economic strike into an unfair practices strike, thereby entitling the strikers to reinstatement, and that respondent's refusal to reinstate its former employees after the strike was discriminatory conduct in violation of § 8(a) (3).[9] The ultimate facts found, in support of the conclusions of law just noted, are supported by substantial evidence. The relevant facts follow.[10]

On July 28, 1954, the Union held a meeting at which time the question of direct bargaining with respondent was discussed but no action taken. After this meeting a group of approximately twenty striking employees adjourned to the premises of the company where they "found" the machine shop open and benches arranged for a meeting. There is evidence that some strikers referred to the meeting as "secret" and that certain workers were referred to as "uninvited." Respondent's president, Nat Giustina, and labor relations director, Sam Hughes, were "invited" to address the meeting. Evidence of whether the latter were called by phone or were already on the premises is conflicting, but undecisive. It is reasonably clear that there was no appreciable time lag between the "invitation" extended the employers and appearance at the machine shop. Hughes, in effect, took over and conducted this meeting, the essence of which was a "back to work" movement. Limited operations of respondent's plant were resumed the next day.

It is unnecessary to chronicle in detail the circumstances thoroughly considered by the trial examiner. Various reasonable and justifiable inferences might be drawn from the events recounted in the evidence, taken singly or in toto. Suffice to say that there is substantial evidence to support the conclusion that, "Implicit in the entire situation * * * was a direct appeal to the employees for the abandonment of their participation in strike action and concerted activity * * * 'We believe that such conduct by the respondent is tantamount to dealing directly with the employees on the issue of wages, in derogation of the exclusive status of the duly designated bargaining representative.' "[11] The trial examiner further concluded that respondent's letter of August 5, 1954,[12] to all employees still on strike, in light of respondent's participation in the back to work meeting, necessarily involved more than a mere statement of intent to lawfully replace economic strikers—it was, essentially, a further solicitation to abandon the strike, coupled with an implicit threat to the employment status of those who ignored its appeal. Once the premise is established, this conclusion is nearly inevitable.

Respondent's subsequent refusal to bargain over wages with Local 2611 is more than supported by substantial evidence. At a meeting with the Union on August 31, 1954, respondent refused to bargain with Local 2611 on the ground that its status had been put in doubt by a petition for decertification filed by certain employees who had returned to work.[13] Respondent was aware that its

7. 29 U.S.C.A. § 158(a) (1).

8. 29 U.S.C.A. § 158(a) (5).

9. 29 U.S.C.A. § 158(a) (3).

10. Although there was some testimony at the hearing, the bulk of the evidence concerning the events of July 28, 1954, are derived from a stipulation entered into May 9, 1955, relating the substance of the July meeting.

11. Trial Examiner's Intermediate Report, Tr. 161–162.

12. The letter read: "Operations at our plant in Eugene were resumed July 29, 1954. Some of you have not returned to work. We plan to continue our Eugene operations. If you have not returned to work by Monday, August 9, 1954 to start the regular day shift, it will be considered that you have severed your employment and we will look to others to fill the jobs."

13. See Midwest Piping Supply Co., Inc., 63 N.L.R.B. 1060.

obligation to bargain was co-existent with its valid collective bargaining agreement.[14] Respondent's contentions here and below that there were other reasons for its refusal to bargain are not supported by the record. The unjustified refusal to bargain with the employees' certified representative is a violation of its statutory duty to bargain collectively.[15] The activities of respondent having converted an economic strike over wages into an unfair practices strike, respondent was thereby obliged to reinstate the former strikers upon termination of the strike and demand for reinstatement in January of 1955; and its refusal to do so constituted further discriminatory practices violative of §§ 8 (a) (1) and 8(a) (3) of the Act.[16]

Returning to consideration of the limited scope of our power to review, we conclude that the findings of fact by the trial examiner, as adopted by the Board, are supported by substantial evidence upon the record considered as a whole.

■ Turning now to respondent's contention that the Union, by striking, allegedly violated § 8(d) of the Act of 1947, we agree with the majority [17] of the Board that this contention was abandoned before the Board. We are therefore precluded by § 10(e) from considering this objection to the order.[18] The rules of the Board, 29 C.F.R. § 102.46(b), state: "No matter not included in a statement of exceptions may thereafter be urged before the Board, or in any further proceeding." Assuming respondent by exceptions attempted to raise the

question of the Union's violation of § 8 (d), those exceptions are so ambiguous as to be totally ineffective to adequately apprise the Board of respondent's intention to assert and rely on the alleged § 8(d) violation. Such ambiguity is the substantial equivalent of no exception at all and is insufficient notice that respondent intends to urge the issue now asserted. N. L. R. B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377; N. L. R. B. v. Essex Wire Corp., 9 Cir., 1957, 245 F.2d 589. Respondent's motion for reconsideration, filed after the decision of the Board and its accompanying dissent, clearly raised for the first time the § 8(d) defense. In light of the prior abandonment, the Board properly rejected the motion as failing to raise any new matter.

■ There remains, under the statute, the possibility we might find extraordinary circumstances which would permit us to consider the § 8(d) violation. We find none in the record. Respondent presses us to resolve this issue as a matter of public policy—that is, the need to penalize rather than reward those who violate express provisions of the Act. The Board too, however, acts in the public interest and those who would, in their own enlightened self-interest, seek to vindicate public rights must do so at the earliest possible moment; they may not first seek to justify their own conduct and then, failing in that, and at the last moment, raise their opponent's alleged misconduct as a bar to enforcement of their own statutory obligations. The Board

14. N. L. R. B. v. J. I. Case Co., 9 Cir., 1953, 201 F.2d 597.

15. 29 U.S.C.A. § 158(a) (5).

16. Mastro Plastics v. N. L. R. B., 1956, 350 U.S. 270, 278, 76 S.Ct. 349, 100 L. Ed. 309; N. L. R. B. v. West Coast Casket Co., Inc., 9 Cir., 1953, 205 F.2d 902, 907.

17. Member Rodgers dissented from the decision on the ground that a § 8(d) issue was properly, "although not with technical nicety" raised and that its resolution in favor of respondent terminated consideration of all other matters.

18. § 10(e), 29 U.S.C.A. § 160(e), provides in pertinent part:

"* * * No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. * * *"

In view of our agreement with the board's conclusions, it becomes unnecessary to determine whether respondent properly raised and preserved a § 8(d) issue in the earlier proceedings.

has discretion to interpret its own rules.[19] "Its discretion is not to be controlled at the whim of a private party to the neglect of the public interest." [20]

The petition to enforce the order of the Board against respondent Giustina Bros. Lumber Co. is granted.

19. N. L. R. B. v. J. S. Popper, Inc., 3 Cir., 1940, 113 F.2d 602.

20. N. L. R. B. v. Monsanto Chemical Co., 8 Cir., 1953, 205 F.2d 763, 765. For other cases refusing to consider issues not raised or urged before the Board, see, e.g., Marshall Field & Co. v. N. L. R. B., 1943, 318 U.S. 253, 63 S.Ct. 585, 87 L. Ed. 744; N. L. R. B. v. Essex Wire Corp., 9 Cir., 1957, 245 F.2d 589; N. L. R. B. v. Venetian Blind Workers Union, 9 Cir., 1953, 207 F.2d 124; N. L. R. B. v. Bussa-Cardozo, 9 Cir., 1953, 205 F. 2d 889.