PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* UNIÓN LOCAL 847, INDEPENDIENTE DE SANTA ISABEL, Defendant.

No. JRT-64-11.        Decided February 19, 1965.

*J. B. Fernández Badillo, Solicitor General, José Orlando Grau, Celia Canales de González* and *Luis M. Rivera Pérez* for petitioner. *Jorge López Santiago* for defendant.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The collective agreement entered into on May 6, 1963, by Luce & Company, *S. en C.*, and Unión Local 847, Independiente de Santa Isabel, and which was in force in Jan-

uary and February 1964, provided, insofar as pertinent in the decision of the present appeal, as follows:

"The Union recognizes that the administration, organization, and operation of the work on the farms . . . is the Employer's exclusive power without any limitation whatsoever, insofar as it does not conflict with the terms of this Agreement." (Art. VI, subd. I.)

"In the piece or incentive work the Employer shall not retaliate against any worker by suspending him from work, nor shall discriminate against him for his refusal to perform work under this system, nor shall it hold the Union liable for the workers' refusal to perform work under that system." (Art. VI, subd. N.).

"During the life of this Collective Agreement the Union to whose employment this Agreement refers shall not resort to strike, nor shall work stoppages be carried out to the detriment of the Employer's interests . . . in which case every dispute shall be submitted to the Local Grievance Committee." (Art. IX.)

"During the life of this Collective Agreement the Employer shall pay to the field and tomato-packing workers the minimum wages in accordance with the following schedule:

| 1 Unclassified workers | May 2 1963 | May 2 1964 | May 2 1965 |
|---|---|---|---|
| | 3.00 | 3.02 | 3.04[1] |

. . ." (Art. XI.)

"The work of cultivation and work other than incentive shall be performed by all the workers, including the tomato pickers, if necessary therefor." (Art. XIII, subd. G.)

It will be observed that in addition to the basic wage for the 8-hour working period, a system of incentive payment had been adopted for those workers who voluntarily wished to come thereunder. In general terms, this system provided

[1] Under Mandatory Decree No. 69, applicable to the Tobacco and Food Crops Industry, 29 R.&R.P.R. §§ 245n–902 and 903, as of January 27, 1964, the minimum wage shall be $0.38 per hour, or $3.04 per day, in all operations connected with the planting, cultivation, harvesting, and delivery of the tomatoes at the warehouse or at the market.

additional payment for each box of tomatos picked by the worker in excess of a certain task or minimum quota. Originally the enterprise paid 10 cents for each box of harvested tomatoes in excess of 30, but for the activity which commenced on January 27, 1964, the method was replaced by tonnage of production per acre,[2] and the harvesting system was changed.[3] These changes in the method of computing payment and harvesting the product resulted in discontent and dissatisfaction among the workers and their leader, in the belief that it reduced the compensation which they had received so far. As a result, there occurred a stoppage in the harvesting activities. The Board determined—with sufficient basis on the record—that the Union called a strike to the detriment of the employer's interests, and concluded that it had violated the no-strike clause of the agreement.

Accordingly, on June 11, 1964 it entered an order directing the labor organization to cease and desist from violating in any manner whatsoever the terms of the collective agreement which it signed or may sign with Luce & Company,

---

[2] In effect, the basic criterion rested on the fact that in the more productive areas the effort and time spent in picking the tomatoes from the field and filling each box was less than in the less productive areas. We copy below the table of incentives of February 3, 1964.

| Tonnage per Acre | Price per Box | Harvesting Period per Box | |
|---|---|---|---|
| 1–2 | $0.10 | .263 | Hours |
| 3–4 | 0.09 | .237 | " |
| 5–6 | 0.08 | .211 | " |
| 7–8 | 0.07 | .184 | " |
| 9–10 | 0.06 | .158 | " |
| 11–12 | 0.05 | .132 | " |

The compensation varied also depending on whether the box was wooden or plastic because of the difference in capacity between both.

[3] The change is described in the decision of the Labor Relations Board as follows: "Instead of working uninterruptedly in the different areas, it was decided to pick the product only when it was ripe so that the workers would not tread upon the plants when passing through the farm. The result of the change in the method was that less pickings were made in each area."

*S. en C.*, in the planting, cultivation, harvesting, and packing of tomatoes, and requiring it further, as affirmative action, the posting of certain notices. On October 5 it petitioned this Court to enforce the order.[4]

In its appearance the Union maintained that the changes unilaterally introduced by the employer in the incentive system was a matter of dispute between the parties, which the enterprise refused to do despite the demands made, and that this refusal to bargain justifies the labor organization's attitude in encouraging or precipitating the stoppage in violation of the terms of the agreement. It relies on *Mastro Plastics Corp.* v. *N.L.R.B.*, 350 U.S. 270, 100 L.Ed. 309 (1956).

■ The difficulty with the Union's position is that the stoppage was not prompted by the employer's alleged commission of the unfair practice to refuse to negotiate. The evidence fully establishes that such activity was due solely to purely economic factors, namely, the contention of the labor organization that the change in the harvesting method within the incentive system was prejudicial to some of its affiliates. This fact would be sufficient to distinguish the situation under consideration from that in *Mastro Plastics Corp.*, *supra*. In that case two employers—whose agreements contained a clause preventing the union from engaging in a strike—discharged a union member because of the latter's activities in support of the certified organization and its opposition to another favored by the employers. The discharge precipitated a strike within the 60-day term after service of notice on the certified union of its desire to renegotiate and modify the agreement. In view of the union's contentions that the discharge constituted an unfair practice as being discrimina-

---

[4] The Union in turn filed a petition to review the order entered. Up to this date it has done nothing to diligently prosecute its appeal. Since the questions raised are identical, we assume that its position is consonant with that adopted in the present case.

tory, the employers alleged *inter alia* that the strike was illegal as violative of the said clause of the agreement. The Federal Supreme Court held that the provision on waiver of the right to strike only prevented the workers from striking to obtain economic benefits—on wages, working period, and other employment conditions—but that it did not apply to those cases in which it was sought to protest and to seek to remedy the employer's unfair practices.[5] *N.L.R.B.* v. *Fitzgerald Mills Corporation*, 313 F.2d 260 (2d Cir. 1963); *N.L.R.B.* v. *Buitoni Foods Corp.*, 298 F.2d 169 (3d Cir. 1962); *National Labor Rel. Bd.* v. *Giustina Bros. Lumber Co.*, 253 F.2d 371 (9th Cir. 1958). See comments on *Mastro* in 7 Vill. L. Rev. 489 (1962); 6 Buffalo L. Rev. 329 (1957); 55 Mich. L. Rev. 296 (1956).

■ On the other hand, we should not overlook the fact that we confront again a situation in which the charge of unfair practice is the violation of the collective agreement, which is not considered as such under the federal legislation. *Cf. Labor Relations Board* v. *Metropolitan Bus Authority*, *ante*, p. 484; *Puerto Rico Telephone* v. *Labor Relations Board*, 86 P.R.R. 362 (1962); *Labor Relations Board* v. *I.L.A.*, 73 P.R.R. 568 (1952). That is why, although a strike precipitated by the employer's unfair practices does not deprive the participants of the benefits of the activities protected, such as reinstatement in employment, back pay, and the like, in Puerto Rico it affords no immunity ipso jure for a violation of the agreement since the Act, in providing that it constitutes an unfair practice on the part of the union, vests the Board with discretionary power to dismiss any such charge whenever the employer who is a party to the contract

---

[5] We need not discuss the situation which arises whenever a strike in its economic inception is converted into an unfair-practice strike by the conduct observed by the employer during the strike. For those having any interest, consult Stewart, *Conversion of Strikes: Economic to Unfair Labor Practice*, 45 Va. L. Rev. 1322 (1959).

is guilty of a violation in the course of the agreement. Section 8(2)(a), 29 L.P.R.A. § 69(2)(a).[6] The question is provided for by the statute. For employer's remedies in the federal jurisdiction for breach of a no-strike clause, see *Employer Remedies for Breach of No-Strike Clauses*, 39 Ind. L.J. 387 (1964). And in this case, even though the Board appreciated that "the spirit of the agreement was that these alterations should not be made without first consulting the union,"[7] without it meaning that the employer "violate[d] the terms of the collective agreement from a legal point of view," in the exercise of the discretion invested by the provision *supra* it concluded that, upon consideration of the merits of the matter, the Union's action was not condonable.

Judgment will be rendered enforcing in its entirety the order entered by the Labor Relations Board on June 11, 1964.

---

[6] In the case of strikes in violation of the agreement clauses whereby the union waives the right to strike, it has been held that as a rule the matter is arbitrable and the actions for damages have been stayed until completion of the arbitration procedure. *Yale & Towne Mfg. Co.* v. *International Asso. of Machinists*, 299 F.2d 882 (3d. Cir. 1962); *Signal-Stat Corp.* v. *United Electrical R.&M.W.*, 235 F.2d 298 (2d Cir. 1956).

In *Drake Bakeries* v. *Local 50*, 370 U.S. 254, 265 (1962), it is said: "This Court held in *Mastro Plastics Corp.* v. *Labor Board*, 350 U.S. 270, 100 L. Ed. 309, 76 S. Ct. 349, that the employer did not have the right to replace employees who had struck over employer unfair labor practices, in the face of an absolute no-strike clause. It was said that, despite the broad prohibition of strikes in the contract, the parties could not have intended to waive the employees' right to strike over a flagrant unfair labor practice, absent an express statement in the contract to that effect . . . *Mastro* . . . involved a flagrant unfair labor practice by the company threatening the very existence of the union itself. *A strike in violation of contract is not per se an unfair labor practice.*"

[7] Even assuming that in this sense the employer engaged in an unfair practice, the Union's duty was to resort to the arbitration procedure provided by the agreement. *Cf. Packinghouse Workers* v. *Needham*, 376 U.S. 247 (1964); *United Steelworkers* v. *American Internt'l Aluminum Corp.*, 334 F.2d 147 (5th Cir. 1964); *cert. denied*, 379 U.S. 991, 33 U.S. L.Week 3251. Labor unions are the ones which as a rule have alleged as a defense the need for arbitrators in actions for damages under § 301 of the Federal Act. For an excellent exposition of the problem, see Stewart, *No-Strike Clauses in the Federal Courts*, 59 Mich. L. Rev. 673 (1961), especially at p. 393 *et seq.*