736 F.2d 1332
 116 L.R.R.M. (BNA) 3201, 101 Lab.Cas. P 11,099
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
International Association of Bridge, Structural,
Reinforcing, and Ornamental Iron Workers, AFL-CIO,
Local 75, Intervenor,
v.
SOUTHWEST SECURITY EQUIPMENT CORPORATION, Respondent.
 No. 83-7286.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1983.
Decided July 3, 1984.
 
 Marjorie Gofreed, NLRB, Washington, D.C., for petitioner.
 Robert J. Deeny, Snell & Wilmer, Phoenix, Ariz., for respondent.
 Paul B. Supton, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for intervenor.
 On Petition for Enforcement of an Order of the National Labor Relations Board.
 Before HUG, PREGERSON, and NORRIS, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The National Labor Relations Board (the Board) petitions for enforcement of an order finding Southwest Security Equipment Corp. (Southwest) guilty of violating National Labor Relations Act (NLRA) Sec. 8(a)(5), 29 U.S.C. Sec. 158(a)(5) (1982).[1] The Board found that Southwest failed to honor the fringe benefit, hiring hall,[2] and grievance arbitration provisions of its collective bargaining agreement with Local 75 of the Bridge Workers Union (the union).
 
 
 2
 In a pro forma opinion, 262 N.L.R.B. 665 (1982), the Board adopted the finding of the administrative law judge (ALJ) that Southwest violated its duty to bargain in good faith when it unilaterally abrogated the hiring hall provision of an expired collective bargaining contract.[3]
 
 
 3
 On petition for enforcement, the Board argues that Southwest may not properly attack the merits of the Board's hiring hall decision because the company failed to comply with NLRA Sec. 10(e), 29 U.S.C. Sec. 160(e) (1982), and Board rules requiring a dissatisfied party to file timely and specific exceptions to an unfavorable ALJ report. In the alternative, the Board contends that the hiring hall provision, as a term or condition of employment within the meaning of NLRA Sec. 8(d), 29 U.S.C. Sec. 158(d) (1982), survives the expiration of the collective bargaining agreement until employer and union bargain to impasse over the fate of the provision in the next contract.
 
 
 4
 Although we think that Southwest filed timely exceptions, we agree with the Board's finding that the hiring hall provision survived the contract's expiration. Therefore, we enforce the Board's order.
 
 FACTS
 
 5
 Southwest sells, services, and installs bank security equipment. In 1979, the Board certified the Bridge Workers Union as the exclusive bargaining agent for employees working out of the company's Phoenix, Arizona premises.
 
 
 6
 After several fits and starts, Southwest President Rick Iglesias signed the union's master agreement with the Arizona Steel Field Erectors Association, a multi-employer group.[4] The contract, effective from August 1, 1977, through July 31, 1980, covered employees who fabricated, erected, and maintained steel used in safes, vaults, vault doors, safe deposit boxes, and other bank security devices. The contract required employers to hire workers through the union's hiring hall, and to make payments on their behalf to various union benefit funds.
 
 
 7
 Between April 22, 1980, and May 16, 1980, Southwest requested, and the union referred, eight employees. Sometime in May, Southwest stopped requesting referrals. Then on May 14, Iglesias informed the union that Southwest would subcontract out for all bargaining unit work. The next day, the union sent a letter to both Iglesias and the multi-employer association stating that the Bridge Workers intended to file a grievance pursuant to the master agreement. Iglesias failed to respond to either the letter or the multi-employer group's attempts to schedule a grievance hearing.
 
 
 8
 On June 20, the multi-employer group notified Iglesias that it had scheduled a grievance hearing for July 1. Southwest failed to appear at the hearing, and on July 2, the arbitration committee issued a decision finding the employer guilty of violating, among other things, the master agreement's hiring hall clause. The union followed up by filing unfair labor practice charges on July 22. Meanwhile, the master agreement expired on July 31.
 
 
 9
 A year later, on July 29, 1981, the ALJ issued a report concluding that Southwest had violated Sec. 8(a)(5) in failing to honor the fringe benefit, hiring hall, and grievance arbitration provisions. On August 20, acting within the Board's 20-day procedural framework for filing objections, Southwest submitted general exceptions to the ALJ's findings. Exception 5 objected to the ALJ's conclusion of law that
 
 
 10
 [b]y failing and refusing to abide by the fringe benefit, referral, and grievance and arbitration provisions of the 1977-1980 Arizona Master Labor Agreement ... thereby unilaterally changing the terms and conditions of employment of its employees, Respondent has engaged in unfair labor practices violating section 8(a)(5) and (1) of the Act.
 
 
 11
 Brief for Respondent Southwest Security Equipment Corp. at 8 (quoting from ALJ report) (emphasis in brief).
 
 
 12
 Similarly, exception 6 identified a particular ALJ finding regarding "referral," but did not provide specific reasons why the employer objected to the finding.
 
 
 13
 But on August 26, 1981, the union filed its own limited exceptions to the ALJ's decision. On September 4, Southwest filed a brief responding to the union's exceptions and clarifying Southwest's reasons for objecting to the ALJ's findings on "referral." The September 4 brief reasoned that Southwest had not committed an unfair labor practice because the hiring hall provision did not survive the master agreement's expiration.
 
 
 14
 Finally, nearly 10 months later, the Board adopted pro forma the ALJ's report. 262 N.L.R.B. 665 (June 30, 1982). Later, on November 12, 1982, the Board rejected Southwest's motion for reconsideration. The Board now petitions for enforcement.
 
 STANDARD OF REVIEW
 
 15
 Two standards of review govern our inquiry. As to the timeliness of the employer's exceptions, we must uphold the Board's decision unless the Board acted arbitrarily or capriciously. NLRB v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, 704 F.2d 1164, 1166 (9th Cir.1983); see also K. Davis, Administrative Law Treatise Sec. 30.10 (1958) (reviewing court may overturn agency's application of properly-adopted regulation only if application is arbitrary or capricious). But in doubtful situations, we merely give "weight" to the Board's application of the Act. Joint Council of Teamsters No. 42 v. NLRB, 702 F.2d 168, 170 (9th Cir.1981) (citing NLRB v. Denver Building & Construction Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284 (1951)), cert. denied, --- U.S. ----, 104 S.Ct. 100, 78 L.Ed.2d 105 (1983).
 
 
 16
 As to the merits of the hiring hall decision, we must defer to the Board's interpretation of the scope of the bargaining obligation under Sec. 8(d) if that interpretation is "reasonably defensible." Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).
 
 ANALYSIS
 
 17
 A. The Procedures: Specificity of Exceptions
 
 
 18
 1. The NLRA and the Board's rules. The NLRA forbids us from considering a matter not presented to the Board or to the ALJ. Section 10(e) provides:
 
 
 19
 No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court [of appeals], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.
 
 
 20
 29 U.S.C. Sec. 160(e) (1982).
 
 
 21
 To implement Sec. 10(e), the Board has promulgated several regulations. Rule 102.46(b), for instance, sets out four requirements that every exception to an ALJ's findings must meet.[5] One requirement commands the party to "state the grounds for the exception[ ]." 29 C.F.R. Sec. 102.46(b)(4) (1983). The rule adds that the Board may disregard or consider waived any exceptions failing to conform to these requirements. Id. Moreover, Rule 102.48(a) provides for pro forma Board adoption of the ALJ's findings when the party fails to meet the requirements of Rule 102.46(b).[6] Finally, Rule 102.46(a) requires the excepting party to file its objections with the Board within 20 days of the date the ALJ transfers the case to the Board. Id. Sec. 102.46(a).
 
 
 22
 2. Applying the requirements. Relying principally on Marshall Field & Co. v. NLRB, 318 U.S. 253, 255, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943), the Board argues that Southwest's exceptions were so unspecific that they could not effectively apprise the Board of an alleged error in the ALJ's findings. The Board reasons that its rules plainly call for more than Southwest's short demurrer in exceptions 5 and 6, filed August 20, 1981. In fact, the Board says, Southwest did not really identify its quarrel with the ALJ's proposed disposition of the hiring hall clause until September 4, 1981, when it filed a brief opposing the union's limited exceptions to other parts of the ALJ's report. But the Board contends that this clarification came too late to preserve the hiring hall question for the Board or this court. By then, the 20-day filing deadline had passed.
 
 
 23
 For three reasons, we think the Board arbitrarily applied Sec. 10(e) and its rules to the facts of this case.
 
 
 24
 First, Southwest meets this Circuit's test for determining sufficiency of notice. In NLRB v. Giustina Bros. Lumber Co., 253 F.2d 371 (9th Cir.1958), we held that Rule 102.46(b) prohibited the respondent from raising an issue before the Ninth Circuit where respondent's objection had been "so ambiguous as to be totally ineffective " in "adequately appris[ing]" the Board of the excepting party's intentions. Id. at 374 (emphasis added). This is a stringent test. But Southwest's exception to the ALJ's referral, whether considered alone or together with its brief of September 4, constituted a much better effort than "totally ineffective" notice.
 
 
 25
 Second, although the NLRA vests the Board with great discretion to resolve unfair labor practice disputes, the statute does not permit the Board to use its authority "in a manner [that] deprives a party of a fair and adequate hearing." NLRB v. Zeno Table Co., 610 F.2d 567, 569 (9th Cir.1979) (citation omitted).
 
 
 26
 Southwest should not be penalized for making adequate, if somewhat inartful, efforts to raise the hiring hall question below. Even if its August 20 effort was insufficient, its September 4 brief--which was submitted only 15 days after the deadline for filing exceptions had passed--certainly cured the problem and put both the ALJ and the Board on notice about Southwest's hiring hall contention. Indeed, the Board would be hard-pressed to argue that Southwest's poor notice somehow prejudiced, see Zeno Table, 610 F.2d at 569, the proceedings. After all, nearly 10 months passed between the date Southwest submitted its September 4 brief clarifying its position, and the date that the Board issued its pro forma decision.
 
 
 27
 Third, the Board's own rules and precedents command it to read its procedural rules liberally. E.g., 29 C.F.R. Sec. 102.121 (1983) ("The rules and regulations in this part shall be liberally construed to effectuate the purposes and provisions of the act."); Daisy's Originals, Inc., 187 N.L.R.B. 251, 251 n. 1 (1970) (" [T]he Board makes every effort to apply its rules with such lenience as will effectuate the purposes of the act." (citation omitted)).
 
 
 28
 The Board cites a string of cases holding against parties who failed to meet the Board's procedural standards. But all these cases are distinguishable as extreme examples whose facts, taken as a whole, showed that the excepting parties filed tardily, ambiguously, or not at all. See, e.g., NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 350, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953) (general exception alleging only that decision was contrary to and unsupported by law held insufficient); Stephenson v. NLRB, 614 F.2d 1210, 1214-15 (9th Cir.1980) (per curiam) (exception relying simply on Board Chairman's dissent below held too ambiguous); NLRB v. STR, Inc., 549 F.2d 641, 642 (9th Cir.1977) (complete failure to file exceptions held insufficient); NLRB v. Selvin, 527 F.2d 1273, 1276 (9th Cir.1975) (exceptions filed 7 months after filing deadline had passed held insufficient); NLRB v. International Association of Bridge Workers, 473 F.2d 816, 817 (9th Cir.1973) (per curiam) (general exceptions held insufficient for failure to make "any other reference" below to contention urged before court of appeals); NLRB v. Pinkerton's National Detective Agency, 202 F.2d 230, 233 (9th Cir.1953) (complete failure to raise issue below held insufficient).
 
 
 29
 We conclude, then, that Southwest filed timely exceptions to the ALJ's report. Therefore, the merits of the hiring hall decision are properly before us.
 
 
 30
 B. The Merits: Hiring Hall Clause Survivability
 
 
 31
 Hiring hall provisions are common in the construction industry, "where jobs tend to be unpredictable, of short duration, and not with any single employer." R. Gorman, Basic Text on Labor Law 643 (1976). The hiring hall serves as a "union-operated clearinghouse which matches employers seeking a transitory workforce [with] employees seeking work." Id.
 
 
 32
 The well-established presumption is that an employer violates his Sec. 8(a)(5) duty to bargain in good faith if he unilaterally changes the terms of a collective agreement, even after that agreement has expired. As we recently put it:
 
 
 33
 [T]he collective bargaining agreement survives its expiration date for purposes of marking the status quo as to wages and working conditions. The employer is required to maintain that status quo following the expiration of the collective bargaining agreement until the parties negotiate a new agreement or bargain in good faith to impasse.
 
 
 34
 NLRB v. Carilli, 648 F.2d 1206, 1214 (9th Cir.1981) (citing Peerless Roofing Co. v. NLRB, 641 F.2d 734, 735 (9th Cir.1981); Clear Pine Mouldings, Inc. v. NLRB, 632 F.2d 721, 729 (9th Cir.1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981)); see also American Distributing Co. v. NLRB, 715 F.2d 446, 449 (9th Cir.1983) (applying same principle); Stone Boat Yard v. NLRB, 715 F.2d 441, 444 (9th Cir.1983) (same)cert denied, --- U.S. ---, 104 S. Ct. 1910, 80 L. Ed.2d 459(1984); NLRB v. Sky Wolf Sales, 470 F.2d 827, 830 (9th Cir.1972) (same).
 
 
 35
 The Board contends that under the law established in these cases, Southwest had the duty to honor the hiring hall provision of the master agreement, even after July 31, 1980. The Board reasons that the hiring hall provision, a subject of mandatory bargaining within the meaning of Sec. 8(d), see NLRB v. Tom Joyce Floors, Inc., 353 F.2d 768, 771 (9th Cir.1965), is no different from employee welfare fund and benefits clauses, which routinely survive contract expiration, see, e.g., Carilli, 648 F.2d at 1214 (preserving employer's payments into union trust fund); Clear Pine Mouldings, 632 F.2d at 729 (preserving existing arrangement for implementing health and welfare plan).[7]
 
 
 36
 But relying on the Board's analysis in Gordon L. Rayner (Bay Area Sealers ), 251 N.L.R.B. 89 (1980), enf'd as modified, 665 F.2d 970 (9th Cir.1982), Southwest contends the fact that the hiring hall provision is a mandatory bargaining subject does not automatically preserve the provision upon the contract's expiration. Quoting Rayner, Southwest argues that only
 
 
 37
 those terms and conditions established by the contract and governing the employer-employee, as opposed to the employer-union, relationship survive the contract and present the employer with a continuing obligation to apply those terms and conditions ....
 
 
 38
 Rayner, 251 N.L.R.B. at 90.
 
 
 39
 According to Southwest, the reasoning behind the Board's own precedents contemplates that only certain types of contract provisions--such as fringe benefits and other "economic benefits or remunerations that the employees receive[ ] from [the employer] in exchange for their labors," Sir James, Inc., 183 N.L.R.B. 256, 259 (1970) (Webster, Tr. Ex.)--are terms or conditions that fit within the "employee/employer" rubric. Hiring hall provisions, Southwest says, are designed to protect the power of unions as institutions, rather than that of individual workers. At the very least, Southwest argues, the Board should conduct its Rayner analysis on the record before deciding that hiring hall provisions are a part of the employer/employee relationship for purposes of Sec. 8(a)(5); the Board should not have adopted pro forma the ALJ's findings on this important matter.
 
 
 40
 Southwest's argument fails for two reasons.
 
 
 41
 First, the Board has long held, after careful consideration, that a hiring hall provision is an essential part of the employee/employer relationship. In Houston Chapter, Associated General Contractors, 143 N.L.R.B. 409 (1963), enf'd, 349 F.2d 449 (5th Cir.1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966), the Board considered whether the union's demand for a hiring hall provision was a mandatory subject of collective bargaining negotiations within the meaning of Sec. 8(a)(5) and Sec. 8(d). The Board ruled that it was. Borrowing language from NLRB v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 350, 78 S.Ct. 718, 723, 2 L.Ed.2d 823 (1958), the Board explained:
 
 
 42
 The second test is whether the subject sought to be bargained about has regulated the relations between the employer and his employees. Certainly, the matter of what standards are to be applied in determining priorities for employment must of necessity regulate relations between the employer and the employees.
 
 
 43
 Houston Chapter, Associated Gen. Contractors, 143 N.L.R.B. at 412 (emphasis added). Even the dissent agreed with this assessment. See id. at 415-16 (Rodgers & Leedom, Members, dissenting) ("[T]he hiring hall is not peripheral to industrial relations. It goes right to the core of the employer-employee relationship ....").
 
 
 44
 Second, Southwest's argument misapprehends the importance of the hiring hall in industries that use it. Without the hiring hall, the construction employee would find it very difficult to find work or to establish seniority and entitlement to union benefits. Work is sporadic. An employer may need help for a day, a month, or a year. Unless he is lucky, the potential employee may spend more time looking for work than he does actually working. But the hiring hall brings employer and prospective employee together. When an employer needs help, he turns to the union. The union maintains a list of people who need work, and promises to fill employer needs as they arise. See R. Gorman, supra, at 643.
 
 
 45
 In short, the construction industry hiring hall is an essential component of the employer/employee relationship. In a sense, the hiring hall is not only part of that relationship, but also the catalyst that makes the relationship possible.
 
 CONCLUSION
 
 46
 We hold that the hiring hall provision, which is properly presented on petition for enforcement, survived the expiration of the collective bargaining agreement. Therefore, we ENFORCE the Board's order.
 
 NORRIS, Circuit Judge, dissenting:
 
 47
 I cannot agree with the majority's analysis of the issue presented by Southwest Security's failure to comply with Board regulations governing the degree of specificity with which parties must make exceptions to an ALJ's findings. As the majority recognizes, we should overturn the Board's decision that these regulations bar Southwest Securities from attacking the merits of the ALJ's decision only if the Board acted arbitrarily. See supra slip op. at p. 2872, at 1336. Because the Board applied the plain language of the regulations to the facts of this case, I cannot conclude that the Board's decision was arbitrary. The exceptions that Southwest Security filed on August 20th--the only exceptions filed before the deadline passed--plainly did not meet the requirements of regulation 102.46(b)(4). Although Southwest Security's exceptions refer obliquely to the hiring hall issue, they do not "include citation of authorities" or set forth "the grounds for the exceptions," as required by the regulation. See id.
 
 
 48
 I am not persuaded by the reasons offered by the majority to support its conclusion that the Board's conduct was arbitrary. The majority takes the position that any defects in the exceptions of August 20th were cured by a brief filed on September 4th. But the brief filed on September 4th was late; it was filed after the twenty-day deadline prescribed by regulation 120.46(a). If I were a member of the Board, I might well allow a late brief to be included in the record so long as no party was prejudiced by the addition. As a judge reviewing the Board's decision, however, I cannot say that the Board was being arbitrary when it refused to consider a brief filed after a deadline explicitly set forth in the governing regulations.
 
 
 49
 Accordingly, we should consider the August 20th filing only. Southwest Security's exceptions in that filing are no less sketchy than those in other cases where the Board's decision to disregard exceptions was upheld on appeal. See e.g., NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 350, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953) (exception alleging only that decision was contrary to law); NLRB v. International Association of Bridge Workers, 473 F.2d 816, 817 (9th Cir.1973) (per curiam) (exception of insufficient particularity).
 
 
 50
 The majority further maintains that Southwest Security's exceptions meet our Circuit's test for determining sufficiency of notice. But the majority inaccurately formulates that test by citing a case, Giustina Brothers v. NLRB, 253 F.2d 371 (9th Cir.1958), which is inapposite. Giustina Brothers held that the Board did not act arbitrarily in disregarding exceptions that were "so ambiguous as to be totally ineffective." Id. at 374. The case thus cannot be used as authority for the majority's decision that the Board did act arbitrarily in disregarding these exceptions. The holding in Giustina Brothers is, rather, the converse of the holding the majority is fashioning in this case. Moreover, even though Southwest Security exceptions may not be "totally ineffective," as were the exceptions in Giustina Brothers, the exceptions here are admittedly deficient nonetheless. And nothing in Giustina Brothers stands for the contrary.
 
 
 51
 Finally, the majority reasons that the Board's enforcement of regulation 102.46 violates regulation 102.121, which states that all regulations should be "liberally construed to effectuate the purposes and provisions of the Act." I fail to see how this general provision supports a decision that the Board's application of regulation 102.46 to the specific facts of this case was arbitrary. After all, Rule 1 of the Federal Rules of Civil Procedure states that courts shall construe those rules "to secure the just, speedy and inexpensive determination of every action." If a district court refused to consider an item filed after a deadline set forth in the local rules of court, however, I doubt we would employ Rule 1 to find that the district court abused its discretion--absent unusual circumstances not present in this case--if the party who filed the item, like Southwest Security, failed to show good cause for missing the deadline. The majority's reliance on the general language of regulation 102.121 is thus simply makeweight.
 
 
 52
 In sum, I see no basis for reaching the merits of the hiring hall issue without intruding upon the Board's discretion to regulate its internal process of administrative appeals. In this case, the Board did neither more nor less than enforce the text of regulation 102.46. Nevertheless, the majority concludes that the Board acted arbitrarily in treating the regulation as if it meant what it said. The majority is thus fashioning a precedent that will frustrate the Board in its legitimate efforts to induce parties to fairly state at least the substance of their legal arguments in a timely manner. I believe the Board has a tough enough job in managing its considerable caseload without being faced with the new obstacle created by today's decision.
 
 
 53
 Accordingly, I respectfully dissent.
 
 
 
 [1]
 The Board also found Southwest guilty of violating NLRA Sec. 8(a)(1), 29 U.S.C. Sec. 158(a)(1) (1982). Section 8(a)(1), which makes it an unfair labor practice for an employer to interfere with an employee's right to engage in or refrain from concerted activities, is often appended as boilerplate to Board complaints charging violations of other Sec. 8(a) provisions
 
 
 [2]
 A hiring hall is "a union-operated clearinghouse which matches employers seeking a transitory workforce [with] employees seeking work." R. Gorman, Basic Text on Labor Law 643 (1976). Hiring hall provisions are common in the construction industry. See generally infra pp. 1337, 1338
 
 
 [3]
 In opposing the Board's petition for enforcement, Southwest contests only the survivability of the hiring hall clause, and not the survivability of the fringe benefit and grievance arbitration clauses
 
 
 [4]
 When the union's representative first contacted Southwest, Iglesias refused to sign the master agreement and said he wanted a special contract because Southwest installed electrical wiring as well as security devices. The master agreement's jurisdiction did not include electrical work. Nonetheless, Iglesias called the union several months later to say he would sign the agreement
 
 
 [5]
 (b) Each exception (1) shall set forth specifically the questions of procedure, fact, law, or policy to which exceptions are taken; (2) shall identify that part of the administrative law judge's decision to which objection is made; (3) shall designate by precise citation of page the portions of the record relied upon; and (4) shall state the grounds for the exceptions and shall include the citation of authorities unless set forth in a supporting brief
 
 
 [29]
 C.F.R. Sec. 102.46(b) (1983)
 
 
 [6]
 (a) In the event no timely or proper exceptions are filed as herein provided, the findings, conclusions, and recommendations of the administrative law judge as contained in his decision shall, pursuant to section 10(c) of the act, automatically become the decision and order of the Board
 Id. Sec. 102.48(a).
 
 
 [7]
 The administrative law judge analogized the survivability of hiring hall provisions to the survivability of grievance arbitration provisions. In so doing, she relied on the Board's decision in American Sink Top & Cabinet Co., 242 N.L.R.B. 408 (1979). See 262 N.L.R.B. at 669 (Robbins, A.L.J.)
 In the present case, however, two members of the Board, in holding that the hiring hall provision survives, expressly disclaim reliance on American Sink Top. See 262 N.L.R.B. at 665 n. 1 (Van de Water, Chairman & Hunter, Member). But see O'Connor Co. v. Carpenters Local 1408, 702 F.2d 824, 825 (9th Cir.1983) ("Termination of a collective bargaining agreement does not necessarily extinguish a party's duty to arbitrate grievances arising under the contract." (citation omitted)).
 In any event, we can resolve the case before us without deciding whether an analogy to arbitration clause survivability is appropriate.