[Civ. No. 11869.   First Dist., Div. Two.   Jan. 14, 1942.]

THE EUCLID CANDY CO. OF CALIFORNIA, INC. (a Corporation), Respondent, v. INTERNATIONAL LONG-. SHOREMEN & WAREHOUSEMEN'S UNION, LOCAL 1-6 (an Unincorporated Association), et al., Appellants.

Gladstein, Grossman, Margolis & Sawyer and George Olshausen for Appellants.

Philip S. Ehrlich, Albert A. Axelrod, Julien R. Bauer, Bartley C. Crum and George O. Bahrs for Respondent.

STURTEVANT, J.—The defendants have appealed from ''a so-called preliminary injunction *pendente lite,* and the

order granting said injunction.'' As the order only was appealable (Code Civ. Proc., sec. 963), it alone will be considered.

On May 8, 1940, the plaintiff filed a verified complaint asking for a restraining order, an order to show cause, a temporary injunction, and for other relief. On that date an order to show cause was made, returnable on May 17, 1940. At the same time and as part of the same instrument a restraining order was made. Later the defendants filed a demurrer to the complaint. An order was entered on May 23, 1940, overruling the demurrer. On May 23, 1940, the order to show cause why a temporary injunction should not issue came on for hearing. Each party produced oral and written evidence. The transcript covers nearly 1600 typewritten pages. In deciding the case the trial court presented a memorandum of decision. ▇▇▇▇ It thereafter signed a temporary injunction which covers forty-two typewritten pages. It commenced with a recital of facts divided into paragraphs I-LI inclusive, and some of those paragraphs are subdivided into two or more divisions. Then follows an order divided into twelve paragraphs restraining certain acts.

▇▇▇▇ The record presents a labor controversy. But no controversy between master and servant was involved. The dispute was between the American Federation of Labor and the Congress of Industrial Organizations, and the alleged injury inflicted on the employer who was no party to the dispute. The matter, among others, involved the following facts:

The plaintiff is a California corporation normally employing two hundred persons, and doing a business in this and other states in excess of $1,000,000 annually. Its employees include two groups, the manufacturers and wrappers of candy, and second, the warehousemen. At the time of the controversy the plaintiff was a party to a collective bargaining agreement with the AFL, the bargaining agency of its employees in its production and wrapping department. That was a closed shop agreement. The plaintiff also had a collective bargaining agreement with the defendant, the CIO, as the bargaining agency of its seven warehousemen. The plaintiff's relations with the CIO had always been friendly and on March 4, 1940, that union forwarded a new contract to plaintiff concerning its warehousemen. Notwithstanding the existing agreement between the AFL and plaintiff, the CIO,

early in 1940, began a raid on the AFL membership, and on March 15, 1940, it requested that the CIO be recognized as the sole bargaining agency for all of the employees of the plaintiff. On April 1, 1940, the CIO commenced an effort to bring about a breach of the collective bargaining agreement between plaintiff and the AFL; that effort at first was by persuasion and later was followed by force. The first step in said effort was to present a new set of demands for plaintiff's warehousemen to create the appearance of a dispute between plaintiff and the CIO. The trial court found those demands were not made by plaintiff's warehousemen and were not made in good faith. The second step of the CIO was to address meetings advocating a slow down of work and threatening to "black list" and "fine" any of the AFL members who did not join the CIO. The slow down reduced the output thirty to forty per cent. The plaintiff hired additional employees who were threatened with physical violence if they did not quit their employment and thereupon they did quit. During all these times the AFL was insisting that the plaintiff abide by its contract with that union and threatened if plaintiff did not do so the AFL would impose economic pressure. On May 2, 1940, plaintiff advised all its employees that it would abide by its valid contract with the AFL. An oral agreement was reached between the CIO and plaintiff concerning the warehousemen of the latter, but plaintiff's attempt to bring about peace between the AFL and the CIO resulted in failure. Thereafter the representative of the CIO threatened to make plaintiff's plant a "battle field." On May 6, 1940, the defendant CIO stationed two hundred or three hundred of its members in front of the plaintiff's plant. The CIO called a strike of plaintiff's warehousemen after said union had refused to sign the aforementioned oral agreement. Thereafter, through the use of "goon squads," physical assaults, and other terroristic devices, the CIO tried to force plaintiff's employees to quit work. Such acts were done and such threats were made that commencing May 6, 1940, and continuing many days thereafter, the AFL in the morning transported its members from the San Francisco Labor Temple to plaintiff's factory and returned them in the evening. On many occasions those busses were followed by other vehicles operated by the CIO and carrying its "goon squads." Such conduct caused to be brought in a protective

force of from five to seventy-five police officers during the week May 6 to May 13, 1940. On May 7, Dominic Gallo, a member of the CIO, assaulted William Price, one of plaintiff's factory employees. The assault was so violent that Price's nose was broken and he suffered concussion of the brain which required hospitalization for three weeks. On May 8, members of the CIO rioted, injuring police officers and causing a state of hysteria among plaintiff's women employees. Late in the afternoon on May 8, plaintiff commenced this action, took out a restraining order, and caused the defendants to be served. When the process server attempted to serve the defendants other disturbances arose and he in turn was assaulted. Those disturbances continued until the attorney acting for defendants advised the latter to desist. Thereafter the defendants commenced to distribute leaflets in front of plaintiff's factory and so continued until the 19th day of May, 1940. There was evidence that such leaflets were false and libelous. For the purpose of said distribution from six to eight members of the CIO continued to march in front of plaintiff's place of business until the trial court made the order from which the defendants have taken this appeal. During the period above mentioned Donald F. Maguire acted as the representative of the CIO. The plaintiff quotes him as saying the CIO would raid every AFL in San Francisco in entire disregard of the Constitution of the United States and other laws. Continuing, the plaintiff also calls to our attention that on May 10, 1940, Myrtle Price, one of the plaintiff's employees and a member of the AFL, at midnight was aroused by the continuous ringing of her doorbell. On making a discreet examination she saw two members of the CIO outside the door. One rang the bell and tried to open the door. The other stood as guard on the sidewalk. On May 13, Myron Fitch, another employee, was waited upon in his own room by five members of the CIO and assaulted and beaten into insensibility. On May 17, 1940, the defendant Maguire called at the office of B. T. Rocca. The latter, a contractor, was acting as deliveryman delivering syrup to the plaintiff. Maguire asked him to stop. Rocca replied that his contract with plaintiff must be complied with. Thereupon Maguire replied, "Oh, to hell with the contract . . . we are just about to the point where we are going to tear up every other contract in San Francisco and throw them into the bay. . . . If your men deliver we can't be responsible for what happens by ten thou-

sand union men . . . we can't be responsible for goon squads."
The plaintiff further quotes statements made May 31, 1940,
by the distributors above mentioned which vilified the plaintiff's employees and threatened them.

The plaintiff also calls attention to facts showing that the
CIO instituted, and at the time of the trial was carrying
out a boycott, local, statewide, and interstate, against this
plaintiff. There was evidence that the literature used for
such purpose was false, untrue, and misleading. Moreover
the CIO threatened openly to blacklist all of plaintiff's employees wherever it could possibly do so.

As stated above, the foregoing facts are recited in plaintiff's brief. The record discloses that many other facts could
have been recited. However, they would be but cumulative
and it is not necessary to add them.

At this time the defendants contend because of isolated
acts of violence on a picket line the trial court had no power
to enjoin (1) peaceful picketing; (2) a secondary boycott;
(3) the distribution of literature; and (4) the carrying of
banners. However no passages of the order appealed from
are specified as being erroneously stated.

Apparently treating as findings the recitals of
facts I-LI, the defendants attack numbers VIII, XX, and
XXXIII, as not being supported by the evidence. However,
under well settled rules those passages are not findings within
the meaning of section 632 of the Code of Civil Procedure.
(*Hunt* v. *Steese*, 75 Cal. 620 [17 Pac. 920]; *Waller* v. *Weston*, 125 Cal. 201 [57 Pac. 892]; *Waymire* v. *California
Trona Co.*, 176 Cal. 395 [168 Pac. 563]; 2 Hayne New Trial and
Appeal, § 242; 64 C. J. 1228; 24 Cal. Jur. 932.)    As
recited above the opinion of the trial court is included in the
transcript. It is also "well established in California that the
opinion of the lower court is not a part of the record on appeal, although the appellate court is always glad to find it in
the transcript, because it is as a rule an aid in discovering
the processes by which the judgment below was reached."
(2 Cal. Jur. 488, "Appeal and Error," § 235.)    It follows
that this court is not bound by what is found in the opinion
of the trial court nor by the purported findings, but that it
may consider the same.

We return to a consideration of the contention of the defendants that because of isolated acts of violence on a picket
line the trial court had no authority to make the order ap-

pealed from. That contention assumes the acts of violence were isolated. ▮ As to whether they were isolated or otherwise was a question of fact. The defendants earnestly contend they were isolated. The plaintiff earnestly contends they were planned, continuous acts which defendants threatened to continue. It alleged facts showing that such acts were continuous and it introduced proof of such allegations. In support of the order appealed from it must be assumed the trial court so found the facts to be. The record shows nothing to the contrary. After hearing the parties the trial court made the order appealed from. Omitting the purported findings hereinabove mentioned, the order contains nearly seven pages, that is, over fifteen folios. The defendants do not, except as herein mentioned, specifically object to any portion of the order. ▮ This court is not bound to search the terms of the order and find, if possible, some passages to criticize. That function, under our practice, rests on him who claims that error has occurred.

▮ From the facts hereinabove set forth it is patent the trial court was authorized in concluding that the defendants had formed and were carrying into effect an unlawful conspiracy against the plaintiff, its employees, customers, and associates; and that the defendants were carrying said conspiracy into effect by violent, illegal, unlawful, and malicious acts. In support of the order appealed from we assume the learned chancellor so concluded. ▮ If he did, he was authorized in making an order for a temporary injunction restraining picketing, peaceful or violent, secondary boycotts, distribution of false and misleading literature, and carrying false and misleading banners. (*Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.*, 312 U. S. 287 [61 Sup. Ct. 552, 85 L. Ed. 836, 132 A. L. R. 1200]; *Meadowmoor Dairies* v. *Milk Wagon Drivers Union*, 371 Ill. 377 [21 N. E. (2d) 308]; *Southern Cal. I. & S. Co.* v. *Amalgamated Assn.*, 186 Cal. 604, 620-622 [200 Pac. 1]; *Lisse* v. *Local Union No. 31*, 2 Cal. (2d) 312, 322, 323 [41 Pac. (2d) 314].)

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied February 13, 1942.