[Civ. No. 8217. Fourth Dist., Div. Two. June 1, 1967.]

CHESTER VERNON CORRIGAN, Plaintiff and Respondent, v. BARBERS & BEAUTICIANS UNION, LOCAL 253 et al., Defendants and Appellants.

Richman, Garrett & Ansell and Herbert M. Ansell for Defendants and Appellants.

Tomlinson & Barbour and M. S. Tomlinson for Plaintiff and Respondent.

TAMURA, J.—Defendants (Barbers & Beauticians Union, Local 253, and their officers and agents) appeal from an order granting a preliminary injunction enjoining them from picketing plaintiff's barber shop or engaging in any other concerted interference with his business, and from a subsequent order denying their motion to reconsider or modify the injunction.

The underlying issue on this appeal is whether the picketing was proscribed by the California Jurisdictional Strike Act (Lab. Code, § 1115 et seq.) or was otherwise unlawful.

Plaintiff is the sole proprietor of a barber shop located in a department store known as the "ABC Union Store." The department store concession agreement under which plaintiff operates the shop requires it to be open for business at least during the store hours of 12 noon to 9 p.m., but does not preclude plaintiff from opening at an earlier hour. The shop is located near the main entrance to the store and has its own exterior door as well as one opening into the store. Signs at both doors advertise "barber shop" and the customary identifying striped pole is located at the exterior entrance.

Plaintiff has operated the shop since November 3, 1964. He regularly employs four to five barbers. The shop hours are 12

noon to 9 p.m. on weekdays, 9 a.m. to 6 p.m. on Saturdays and 10 a.m. to 6 p.m. on Sundays.

Sometime in November or December 1964 the president of the department store, Mr. Staw, held the first of approximately three meetings with representatives of the barbers' union. The union had learned that a barber shop would be located in the department store and expressed concern over the days and hours the shop would be open and the prices to be charged for haircuts. It contended that 80 to 90 percent of the barbers in the area adhered to the schedule of days and hours (8 a.m. to 5:30 p.m.) and price structure established by the union in its contracts and sought to have plaintiff operate his shop in accordance with those standards.

At one point during negotiations, plaintiff and Mr. Staw offered, by way of compromise, to maintain a shop schedule of 12 noon to 6:30 p.m. and to close on Sundays and Mondays. On prices, however, plaintiff's position was that he would charge in accordance with the minimum schedule adopted by state regulations. The offer was rejected by the union.

The evidence relating to the negotiations through Mr. Staw does not reveal any demand by the barbers' union during that period for recognition as exclusive bargaining agent for plaintiff's employees or for work assignment to its members.

On February 11, 1965, plaintiff signed a contract, retroactive to February 1, with the Retail Clerks Union (Local 1428) recognizing it as the bargaining agent for his employees. The department store had already entered into a collective bargaining agreement with the retail clerks union so that the agreement with plaintiff merely consisted of a provision concerning the minimum wages to be paid and incorporated by reference the department store agreement. Mr. Staw testified he did not assist in negotiating plaintiff's contract but did inform him that it would be in the best interest of the department store to have his employees represented by a union.

On April 8, 1965, defendants began picketing in front of the exterior door to plaintiff's shop, one of the placards stating in part: "To the Public—Barber Shop Sub-Union Working Conditions." On the same date defendant union dispatched letters to the plaintiff, the department store, the retail clerks' union, the teamsters' union and the central labor council in San Bernardino stating in substance that it had been attempting "to iron out the hours and conditions" at the barber shop and that the days and hours which plaintiff

proposed to maintain would lower the standards the union had been able to establish in the area. The letter informed the interested parties of the union's intention to picket the shop to publicize the fact that it is being operated "under sub-union conditions" with the assurance, however, that picketing would not be conducted in such a manner as to cause work stoppage or to prevent delivery of goods. The union expressly disclaimed any right to represent the employees of the shop or the right to be recognized as their bargaining representative.

In his verified complaint for injunction plaintiff alleged that none of his employees were members of the barbers' union or desired representation by it; that "prior to the commencement of the action" (May 7, 1965), the retail clerks' Union demanded recognition as bargaining agent for his employees and on February 11, 1965, he signed a collective bargaining agreement with that union. He further alleged that on February 15, 1965, and on several occasions thereafter, defendant union demanded recognition as exclusive bargaining agent for his employees; he refused those demands; and the union is seeking to force plaintiff to accept its demands by concerted interference with plaintiff's business, including untruthful picketing, in violation of the California Jurisdictional Strike Act. The complaint alleged that there was no dispute between plaintiff and his employees, and no bonafide labor dispute between plaintiff and defendants.

In their answer, in addition to a general denial, defendants alleged that the barbers' union at no time demanded recognition as exclusive bargaining agent for plaintiff's employees nor asserted the right to have work assigned to its members. Defendants referred to their meetings with representatives of the owner of the department store respecting the days, hours and prices to be maintained by the barber shop and alleged that after years of endeavor, the barbers' union had been able to establish among many barbershops in San Bernardino County what it considered minimum standards, but that plaintiff demanded exceptions from those standards. They further alleged they were not informed of plaintiff's agreement with the retail clerks' union until after they refused to agree to the exceptions and that the only purpose of the picketing which commenced on April 8, 1965, was to publicize the fact that the standards of operation of plaintiff's shop were below those "existing in the community."

At the hearing on the order to show cause plaintiff introduced affidavits from three of his barbers stating that sub-

sequent to February 11, 1965, representatives of the barbers' union had solicited their membership. They declared they were all members of the retail clerks' union and felt that the purpose of the picketing was to influence them to join the barbers' union.

The court granted a preliminary injunction which in general restrained defendants from picketing plaintiff's shop; causing or encouraging plaintiff's employees to strike, engage in work slowdown, work stoppage or other concerted action against plaintiff; continuing in effect any sanctions theretofore issued by the defendant union against plaintiff; "intentionally interfering with plaintiff's business"; preventing plaintiff, either directly or indirectly, from obtaining supplies for use in his business; or from engaging in any other concerted interference with plaintiff's business.

Defendant's subsequent motion to vacate the injunction by limiting the conduct enjoined to concerted activities for the purpose of compelling plaintiff to recognize the barbers' union as the bargaining agent of his employees or compelling him to assign work to its members was denied.

Defendants contend (1) that the uncontradicted evidence discloses that the picketing was not undertaken in furtherance of objectives proscribed by the California Jurisdictional Strike Act (hereafter referred to as the "Act"), or (2) if an injunction was justified, defendants may only be enjoined from concerted activities which have as their purpose the furtherance of objectives prohibited by the Act. Plaintiff argues that the evidence supports an implied finding that the picketing was in violation of the Act and, in addition, that it was untruthful and, hence, enjoinable on that ground alone.

We shall first consider the question whether the record sustains an implied finding that a jurisdictional dispute existed.

Section 1118 of the California Jurisdictional Strike Act defines a jurisdictional strike as follows: "As used in this chapter, 'jurisdictional strike' means a concerted refusal to perform work for an employer or any other concerted interference with an employer's operation or business, arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to bargain collectively with an employer on behalf of his employees or any of them, or arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to have its members perform work for an employer."

■ The Act does not apply unless the concerted interference with the employer's business arises out of a dispute between two or more labor organizations as to which has the exclusive right to bargain with an employer or have its members perform work for him. (*Smyrniotis* v. *Local Joint Executive Board etc. & B.I.U.*, 64 Cal.2d 30, 36-37 [48 Cal.Rptr. 725, 409 P.2d 949]; *Surrey Restaurants* v. *Culinary Workers & Bartenders Union*, 54 Cal.2d 461, 464 [6 Cal.Rptr. 18, 353 P.2d 730]; *Messner* v. *Journeymen Barbers etc. Int. Union*, 53 Cal.2d 873, 881-882 [4 Cal.Rptr. 179, 351 P.2d 347]; *Petri Cleaners, Inc.* v. *Automotive Emp. etc. Local No. 88*, 53 Cal.2d 455, 471-472 [2 Cal.Rptr. 470, 349 P.2d 76]; *Seven Up etc. Co.* v. *Grocery etc. Union,* 40 Cal.2d 368, 372-373 [254 P.2d 544, 33 A.L.R.2d 327].) ■ In order to justify a preliminary injunction under the Act "the existence of a 'jurisdictional' strike must be tentatively established by the complaint and affidavits in the manner provided by section 527 of the Code of Civil Procedure." (*Surrey Restaurants* v. *Culinary Workers & Bartenders Union, supra.*)

In *Smyrniotis* v. *Local Joint Executive Board etc. & B..I.U., supra*, 64 Cal.2d 30, 36-37, decided during the pendency of this appeal, the court reviewed the legislative policy leading to the adoption of the Act and re-examined the meaning of section 1118. The court held that the "key language" of the section is "the requirement that the 'concerted interference' . . . must arise out of a 'controversy between two or more labor organizations as to which of them' has, or should have, the right to bargain collectively with, or perform work for, the employer." "The words 'arising out of a controversy,' " the court stated, "must mean that the interference *originate* in a jurisdictional dispute. The interference then issues from the dispute between the two unions as to which should represent the employees or perform the work; it emanates from 'pre-existing, multi-union quarrels for power. . . .' " [Italics supplied.] The court overruled earlier cases (*Voeltz* v. *Bakery etc. Union*, 40 Cal.2d 382, 385 [254 P.2d 553]; *In re Kelleher*, 40 Cal.2d 424 [254 P.2d 572], *Isthmian S.S. Co.* v. *National Marine etc. Assn.*, 40 Cal.2d 433 [254 P.2d 578]; *Globe Dairy Lunch* v. *Joint etc. Culinary Workers*, 117 Cal. App.2d 190 [255 P.2d 94]) to the extent that they permitted the appearance of a second union to convert a legitimate strike into a jurisdictional strike. Although the chronology of the appearance of the unions is important, the court held that it was not controlling. "The test," the court held, "must

turn upon the *nature* of the dispute; whether or not the union's action *arose* out of a jurisdictional dispute.'' In determining whether the activity sought to be enjoined is one arising out of a controversy between two or more unions, the court prescribed consideration of all relevant factors including whether the original dispute is still alive, the bargaining history, the origin and nature of the dispute, the time sequence of that dispute, the union or employee interest and activity in that dispute, status of the second union, the membership of the unions, and the expressions of the employees.

█ In the instant case, the evidence would support an implied finding that the picketing was conducted for a dual purpose; (1) to compel plaintiff to maintain days, hours and prices in accordance with the standards of the barbers' union; and (2) to organize plaintiff's employees and compel plaintiff to recognize the barbers' union as the exclusive bargaining agent for his employees.

Defendants insist that the evidence shows that the objective of the barbers' union involved only the former. The evidence and the reasonable inferences which may be drawn therefrom show, however, that the union's objective was not so limited. The verified complaint alleges that on February 15 and on several occasions thereafter the barbers' union demanded recognition as exclusive bargaining agent.[1] The affidavits of three of plaintiff's employees state that the representatives of the barbers' union solicited their membership after plaintiff had signed a collective bargaining agreement with the retail clerks' union. The record shows that defendants commenced picketing only after they learned that plaintiff had entered into a collective bargaining agreement with the retail clerks union. In addition, from the language used on the placard— ''Sub-Union Working Conditions''—a reasonable inference might be drawn that defendants' objectives were not as limited as they contend.

A consideration of all relevant factors thus justified the trial court in concluding that one aspect of the picketing was organizational and recognitional and, hence, jurisdictional within the meaning of the Act. Defendants do not seriously challenge the validity of the injunction insofar as it relates to concerted activity for organizational or recognitional purposes. Nor may they do so if they are to be consistent with the

---

[1]Although there is a general denial of the allegations of the complaint, the record shows that the answer was unverified.

position which they say they have taken throughout their negotiations with plaintiff; namely, that the barbers' union has never had any recognitional or organizational objectives, either prior to or subsequent to the appearance of the retail clerks' union.

The injunction as issued, however, goes far beyond enjoining concerted activities for organizational or recognitional purposes. It constitutes a blanket prohibition against all picketing or other concerted activities irrespective of the lawfulness of the objective. This is the nub of defendants' attack upon the injunction. In our opinion defendants' position in this respect is well taken.

''Unlawful conduct in connection with concerted activities does not necessarily call for an injunction totally prohibiting the activities. A union may continue its concerted activities if they can be purged of the elements that make them unlawful.'' (*Park & Tilford Import Corp.* v. *International Brotherhood of Teamsters*, 27 Cal.2d 599, 607 [165 P.2d 891, 162 A.L.R. 1426].) In the instant case, the unlawful aspect of the picketing did not so infect defendant's activity as to justify total prohibition of all picketing.

The Jurisdictional Strike Act was not designed to prohibit all concerted activities. (*Smyrniotis* v. *Local Joint Executive Board etc. & B.I.U.*, *supra*, 64 Cal.2d at page 35.) ''Although the statute seeks to avoid the undesirable effects of jurisdictional strikes it specifically affirms the right of employees to participate in concerted activity; it attempts to prevent employers from misusing the statute to abridge those rights. Section 1119 provides: 'Nothing in this chapter shall be construed to interfere with collective bargaining subject to the prohibitions herein set forth. . . .' '' (*Smyrniotis* v. *Local Joint Executive Board etc. & B.I.U.*, *supra*, at p. 36.)

Moreover, peaceful picketing, unless contrary to a valid state statute or policy is still recognized as a right protected by the First Amendment. (*Schwartz-Torrance Inv. Corp.* v. *Bakery & Confectionery Workers' Union*, 61 Cal.2d 766, 769-770 [40 Cal.Rptr. 233, 394 P.2d 921], cert. den. 380 U.S. 906 [13 L.Ed.2d 794, 85 S.Ct. 888]; *Hughes* v. *Superior Court*, 32 Cal.2d 850, 854 [198 P.2d 885], affd. 339 U.S. 460 [94 L.Ed. 985, 70 S.Ct. 718]; *In re Porterfield*, 28 Cal.2d 91, 105 [168 P.2d 706, 167 A.L.R. 675].) In *Schwartz-Torrance Inv. Corp.* v. *Bakery & Confectionery Workers' Union, supra*, our Supreme Court recently observed that ''. . . the bedrock principle of *Thornhill* [*Thornhill* v. *Alabama*, 310 U.S. 88 (84

L.Ed. 1093, 60 S.Ct. 736)], that picketing constitutes a manifestation of free speech, remains intact. This court has frequently acknowledged and applied the *Thornhill* principle.''

■ ''A union may use the various forms of concerted action, such as strike, picketing, or boycott, to enforce an objective that is reasonably related to any legitimate interest of organized labor.'' (*James* v. *Marinship Corp.*, 25 Cal.2d 721, 728 [155 P.2d 329, 160 A.L.R. 900]; *Hughes* v. *Superior Court, supra*, 32 Cal.2d 850, 854.) ■ The maintenance of the union standards as to days, hours and prices was a legitimate objective of the barbers' union and it was entitled to attempt to persuade plaintiff to adopt these standards through peaceful picketing even though there was no dispute between plaintiff and his employees and even though none of his employees was a member of the barbers' union or desired it to represent him. (*Chrisman* v. *Culinary Workers' Local No. 62*, 46 Cal.App.2d 129, 132 [115 P.2d 553]; *In re Lyons*, 27 Cal.App.2d 293, 298 [81 P.2d 190]; *Messner* v. *Journeymen Barbers etc. Int. Union, supra*, 53 Cal.2d 873, 878; See *C. S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389, 397-398 [106 P.2d 414].) ■ ''The right to inform the public concerning and to discuss the asserted virtues and faults of employers, and of working conditions, and of union objects [*sic*], and the advantages and disadvantages of membership in any particular union, is protected as an incident of free speech and free assembly.'' (*In re Porterfield, supra*, 28 Cal.2d 91, 105; *Schwartz-Torrance Inv. Corp.* v. *Bakery & Confectionery Workers' Union, supra*, 61 Cal.2d 766, 769-770.) '''[T]he members of a labor organization may have a substantial interest in the employment relations of an employer although none of them is or ever has been employed by him. The reason for this is that the employment relations of every employer affect the working conditions and bargaining power of employees throughout the industry in which he competes.''' (*Messner* v. *Journeymen Barbers etc. Int. Union, supra*, at p. 878, quoting *C. S. Smith Met. Market Co.* v. *Lyons, supra*, at p. 401; *American Radio Assn.* v. *Superior Court*, 237 Cal.App.2d 891, 895-896 [47 Cal.Rptr. 419].)

■ One aspect of the picketing was clearly for the purpose of attempting to persuade plaintiff to maintain days, hours and prices in accordance with barbers' union standards. This aspect of the controversy between plaintiff and defendants did not arise out of a contest between two unions. Plaintiff may not, therefore, rid himself of the controversy as

a jurisdictional dispute by signing a contract with the retail clerks' union. (*Smyrniotis* v. *Local Joint Executive Board etc. & B.I.U., supra,* 64 Cal.2d 30.)

We conclude that the barbers' union may not be enjoined from publicizing through peaceful picketing its differences with plaintiff over the days, hours and prices. ▮▮▮ An injunction which prohibits peaceful picketing for a lawful labor objective is beyond the jurisdiction of the court. (*Fortenbury* v. *Superior Court,* 16 Cal.2d 405, 408-409 [106 P.2d 411].)

The question remains whether the picketing was validly enjoined because it published a false or misleading message. ▮▮▮ Untruthful picketing may· be enjoined though its purpose be valid. *Magill Bros.* v. *Building Service etc. Union,* 20 Cal.2d 506, 508 [127 P.2d 542]; *Park & Tilford Import Corp.* v. *International Brotherhood of Teamsters, supra,* 27 Cal.2d 599, 613; See *Seven Up etc. Co.* v. *Grocery etc. Union, supra,* 40 Cal.2d 368, 374.) The distribution of "false and misleading literature" or the carrying of "false and misleading banners" in a labor dispute may be enjoined. (*Euclid Candy Co.* v. *International Longshoremen & Warehousemen's Union,* 49 Cal.App.2d 137, 143 [121 P.2d 91].)

▮▮▮ The sign carried by defendants' pickets stated that the barber shop was operating under "sub-union working conditions." While a discerning observer might not interpret "sub-union" as the equivalent of "non-union," the words, though perhaps not strictly false, are materially misleading to the general public to whom they are addressed. They convey the false impression that the shop is non-union when, in truth, all of the employees are members of the retail clerks union and plaintiff has signed a contract with that union. There is no evidence or suggestion that the retail clerks union is not a bona fide union or that it is dominated by the plaintiff or the department store. An injunction against the publication of such materially misleading statements would, therefore, have been justified. (*Magill Bros.* v. *Building Service etc. Union, supra,* 20 Cal.2d 506; *Euclid Candy Co.* v. *International Longshoremen & Warehousemen's Union, supra,* 49 Cal.App. 2d 137, 143.)

For the foregoing reasons the preliminary injunction should be modified by limiting the acts enjoined to those engaged in by defendants for the purpose of compelling plaintiff to recognize the barbers' union as the exclusive bargaining agent for plaintiff's employees or compelling work assignment to members of the barbers' union. Defendants may not be

enjoined from peaceful picketing for the purpose of publicizing the dispute between plaintiff and the barbers' union over the days, hours and prices maintained by the shop, but may be enjoined from the use of the words "sub-union" or other materially misleading or false statement concerning the operation of plaintiff's business.

The orders from which defendants have appealed are reversed and the trial court is directed to grant the motion for reconsideration and modify the preliminary injunction in accordance with the views herein expressed.

McCabe, P. J., and Kerrigan, J., concurred.