[Civ. No. 18651.   Second Dist., Div. Three.   Apr. 3, 1953.]

GLOBE DAIRY LUNCH COMPANY (a Corporation), Respondent, v. THE JOINT EXECUTIVE BOARD OF CULINARY WORKERS, etc., et al., Appellants.

John C. Stevenson, Lionel Richman, George E. Boble and Louis R. Stein for Appellants.

Hyman Smith and Howard R. Harris for Respondent.

VALLÉE, J.—Appeals by certain defendants from an order granting a preliminary injunction. Defendants, other than Globe Independent Employees' Association, will be referred to as defendant unions. Globe Independent Employees' Association will be referred to as the association.

From the verified complaint and the affidavits, viewed most favorably to plaintiff, it appears that plaintiff is engaged in the business of operating a commissary and bakery and two restaurants with cocktail bars. The commissary and bakery are operated exclusively for the purpose of supplying food and bakery products to the two restaurants. Defendant unions had for several years sought to obtain a collective bargaining agreement with plaintiff's predecessor. In February, 1950, they picketed the restaurants. In April, 1950, while the restaurants were owned by plaintiff's predecessor, the picketing was terminated. In June, 1950, plaintiff had 93 persons in its employ, excluding office managers. On June 23, 1950, defendant Globe Independent Employees' Association, consisting of nonsupervisory employees of plaintiff, was organized. The association was formed with the assistance of one Steese, an independent expert in labor organization, who was not employed by or in any way connected with plaintiff. Eighty-six of the 93 nonsupervisory employees of plaintiff freely designated the association as their representative to negotiate the terms and conditions of their employment with plaintiff. The association is not financed in whole or in part, dominated or controlled in any respect by plaintiff.

On July 1, 1950, the association, in writing. demanded the exclusive bargaining rights for all nonsupervisory employees of plaintiff, and demanded that plaintiff negotiate a collective bargaining agreement with it, covering all matters pertaining to wages, hours, and working conditions of those employees. The demand stated that failure by plaintiff to comply with the demands immediately and completely would leave the association no alternative but to exert economic pressure. On January 15, 1951, plaintiff and the association entered into a collective bargaining agreement by which plaintiff recog-

nized the association as the exclusive bargaining agent for all of its nonsupervisory employees.

About January 18, 1951, defendants, other than the association, agreed among themselves that they, and each of them, would and did commence a course of aggressive activities to compel plaintiff to breach the agreement of January 15, 1951, with the association, and to compel plaintiff to make exclusive collective bargaining agreements with defendant unions, and to require plaintiff to compel its nonsupervisory employees to join an appropriate union other than the association or to discharge the employees who refused. On January 22, 1951, defendant unions picketed plaintiff's places of business. The pickets carried placards stating the plaintiff was unfair to organized labor. The picket in charge of the others told the president of plaintiff that the picketing would continue unless and until plaintiff signed collective bargaining agreements with defendant unions, that defendant unions would not recognize the association, and that they demanded the exclusive right to bargain collectively with plaintiff. Members of other unions refused to make deliveries to plaintiff because of the pickets. Defendant unions placed plaintiff on the "unfair" or "we do not patronize list," and circulated the same among the members of the unions affiliated with the American Federation of Labor in the Los Angeles area for the purpose of having such members refuse to patronize plaintiff. Defendant unions were concertedly interfering with plaintiff's operations and business and threaten to continue to do so. Their acts were done with knowledge of the existence of the agreement of January 15, 1951, between plaintiff and the association. The association threatened to call a strike if plaintiff dealt with defendant unions or if it repudiated the collective bargaining agreement of January 15, 1951. Plaintiff has suffered a substantial loss of business and good will.

The preliminary injunction restrained defendants from picketing at, near, or in front of any of plaintiff's places of business, from representing that plaintiff's employees are unorganized or that its products are made by unorganized labor or that it is unfair to organized labor, and from placing plaintiff on the "unfair" or "we do not patronize list."

Defendants' points for reversal are: (1) The Jurisdictional Strike Law of California (Lab. Code, § 1115 et seq.) is unconstitutional. (2) The preliminary injunction should be modified since it seeks to prohibit acts not subject to prior restraint. (3) The picketing did not arise out of a con-

troversy defined by the Jurisdictional Strike Law. (4) Where the picketing has both a legal and an illegal objective the court will not prohibit all picketing but will enjoin the picketing for the illegal objective only:

In a series of recent cases the Supreme Court has decided all of the points made by defendants adversely to their contentions. ▮ The Jurisdictional Strike Law is constitutional. (*Seven Up Bottling Co.* v. *Grocery Drivers Union,* 40 Cal.2d 368 [254 P.2d 544].) The court decided that a preliminary injunction, issued on substantially similar facts, does not prohibit acts not subject to prior restraint, that the picketing did arise out of a controversy defined by the Jurisdictional Strike Law, and that the picketing did not have both a legal and an illegal objective. (*Voeltz* v. *Bakery & Confectionery Workers Intl. Union,* 40 Cal.2d 382 [254 P.2d 553] ; *Sommer* v. *Metal Trades Council,* 40 Cal.2d 392 [254 P.2d 559] ; *In re Kelleher,* 40 Cal.2d 424 [254 P.2d 572] ; *Isthmian S.S. Co.* v. *National etc. Assn.,* 40 Cal.2d 433 [254 P.2d 578].)

The defendants Service and Maintenance Employees Union Local 399, George Hardy, its president; Bakery Drivers Local Union No. 276, Charles A. Bolton, its secretary; Jack Allis, and Jack De Po, Jr., also contend that the trial court abused its discretion in granting the preliminary injunction against them. They argue that there was no evidence connecting them with the illegal acts. The issue was tried on the verified complaint and affidavits. ▮ When an issue is tried on affidavits, the rule is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and when there is a substantial conflict in the facts stated, the determination of the controverted facts by the trial court will not be disturbed. (*Hayutin* v. *Rudnick,* 115 Cal. App.2d 138, 139 [251 P.2d 707].) ▮ It appears that these defendants agreed to and did join with the other defendants in the commission of the acts, and that they acted in concert with the other defendants. It also appears that pickets maintained by these defendants prevented deliveries to plaintiff. The facts show a conspiracy. ▮ A conspiracy may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. (*California Auto Court Assn.* v. *Cohn,* 98 Cal.App.2d 145, 149 [219 P.2d 511].) ▮ A conspiracy renders each participant in the wrongful acts responsible as a

joint tort feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor, and regardless of the degree of his activity. (*Mox Inc.* v. *Woods,* 202 Cal. 675, 677-678 [262 P. 302].) ▪ It cannot be said that the court abused its discretionary power in ordering a preliminary injunction against these defendants pending a hearing on the merits.

Order affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's (Service etc. Union) petition for a hearing by the Supreme Court was denied May 28, 1953. Carter, J., was of the opinion that the petition should be granted.