**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS, LODGE 942, AFL–CIO, Appellee.**

**No. 15814.**

United States Court of Appeals Ninth Circuit.

Feb. 4, 1959.

Rehearing Denied Feb. 26, 1959.

Jerome D. Fenton, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst.

General Counsel, Thomas J. Ryan, Norton J. Come, Duane B. Beeson, Attorneys, N. L. R. B., Washington, D. C., for petitioner.

Plato E. Papps, Chief Counsel, Int. Ass'n of Machinists, Bernard Dunau, Washington, D. C., for respondent.

Richard W. Axtell, Michael J. O'Brien, Spokane, Wash., amicus curiae.

Before BONE, ORR and BARNES, Circuit Judges.

ORR, Circuit Judge.

The National Labor Relations Board, hereafter Board, determined in a proceeding before it that respondent International Association of Machinists, Lodge 942, AFL-CIO, hereafter Union, had committed unfair labor practices in that it had attempted to illegally restrain and coerce the employees of the Alloy Manufacturing Company, hereafter Alloy, as prohibited by section 8(b) (1) (A) of the National Labor Relations Act, 61 Stat. 140 (1947), 29 U.S.C.A. § 158, and that Union had violated section 8(b) (2) of the Act by attempting to cause Alloy to discriminate against its employees in violation of section 8(a) (3).

Section 8(b) (1) (A) provides that: "It shall be an unfair labor practice for a labor organization or its agents * * to restrain or coerce * * * employees in the exercise of the rights guaranteed in section 7"; section 7, 29 U.S.C.A. § 157 provides that: "employees shall have the right to self-organization, * * to bargain collectively through representatives of their own choosing * * * and shall also have the right to refrain from any or all of such activities * * ".

Section 8(b) (2) provides that: "It shall be an unfair labor practice for a labor organization or its agents * * * to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * " and subsection (a) (3) provides that: "It shall be an unfair labor practice for an employer * * * by discrimination in regard to hire or tenure * * * to encourage or discourage membership in any labor organization * * * ".

The Board after entering its order petitioned this court for its enforcement.

Alloy manufactures and sells truck bodies, semi-trailers and allied products. In 1954 Union made an effort to become the bargaining agent of Alloy's employees. Pursuant to proper initiation procedure, the Board conducted an election which resulted in the rejection of Union as the bargaining agent. In the spring of 1955, Union renewed its efforts to get a collective bargaining agreement by direct approach to Alloy rather than to its employees and presented to Alloy a proposed agreement to that effect together with a demand that all employees become members of Union. Alloy refused to so agree on the ground that such an agreement could not be validly executed, absent the selection of its employees of Union as such agent. But 1 or 2 out of a total of employees ranging from 8–13 were members of Union at the times the demands were made. At no time has Union maintained that it represented a majority of the employees. In making its demand on Alloy that it designate Union as its bargaining agent it informed Alloy that: "We are doing things different this year. We are * * * going direct to the employer, and we'd like to have you sign the contract and then go tell your men that you're Union and they will be very happy to be in the Union."

Further meetings and discussions were had and Alloy continued to refuse to sign the agreement. On June 20, Union requested that Alloy be placed on the Spokane Central Labor Council's "We Do Not Patronize List" and that was subsequently done. The Union also made appeals to Alloy's customers to stop doing business with Alloy. On June 23 the company filed a petition with the Board seeking a second representation election.

On August 16, Union began picketing the plant, and continued to do so for almost a year and until proceedings were instituted with the Board. After picketing began, five employees did not report for work and were subsequently replaced.

Alloy continued to operate though on some occasions truck drivers refused to unload supplies, and some of its customers notified Alloy that their business relations with Alloy were being affected by the picketing.

The Union resisted the proposal of Alloy for an election, informing the Board that it did "not claim to represent any of (Alloy's) employees." The Board nevertheless ordered an election which was held. No votes were cast for Union; six were cast against it. In the face of this unanimous rejection, Union continued its course of conduct consisting of picketing, listing and customer appeals.

In holding that Union violated section 8(b) (1) (A), the Board found that Union had exerted economic pressure on Alloy for the purpose of forcing Alloy to recognize Union as exclusive bargaining agent notwithstanding it represented no employees of Alloy.

The Board's holding that Union violated section 8(b) (2) and (1) (A) was on the ground that its activities were engaged in for the purpose of enforcing its demand for a security agreement.

Union concedes that it violated section 8(b) (2) of the Act in that it attempted "to cause an employer to discriminate against an employee in violation of subsection (a) (3)" by picketing to secure a union shop agreement when it had no majority. It asserts, however, that the facts fail to establish a violation of 8(b) (1) (A) and further maintains that the "Do Not Patronize List" and the customer appeals violated no provisions of the Act. The order of the Board is said to be too broad to the extent that it prohibits conduct not actually engaged in or threatened to be engaged in by Union.

In the light of Union's concession that by its conduct it violated section 8(b) (2) it becomes unnecessary to determine whether it violated 8(b) (1) (A) in respect to the use of pickets to force acceptance of a union security agreement since Union has acquiesced in the entry of a decree enforcing the order of the Board in this respect.

The objection of Union first made in this court that the finding of the trial examiner upon which the Board based its order that picketing for the purpose of achieving designation of it as the exclusive bargaining agent violated section 8(b) (1) (A) cannot be entertained by us because Union took no exception to that finding of the examiner—indeed it filed no objections to the report of the examiner at all. It merely requested permission to make an oral argument before the Board which was denied. Section 10(e) of the Act, 29 U.S.C.A. § 160(e) which governs the jurisdiction ·of this court provides that: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." No attempt has been made to excuse the failure. Section 10(e) has been construed to require that objections must be raised at all stages so that the Board process may be invoked to the full extent available. As an illustration of the necessity of taking exception, in Marshall Field & Co. v. N. L. R. B., 1943, 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744, the Supreme Court held that a general objection "that the examiner had erred 'in making each and every recommendation' " did not satisfy the requirement of 10(e) emphasizing the "salutory policy of 10(e) of affording the Board opportunity to consider on the merits questions to be urged upon review of its order." 318 U.S. at pages 255–256, 63 S.Ct. at page 586. In N. L. R. B. v. Seven-Up Bottling Co. of Miami, 1953, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377, the Supreme Court held that no issue not raised as an exception to the examiners' intermediate report could be considered by the court. This court has held that "objection" as used in the statute is not limited to procedural or factual matters, but extends to all issues. N. L. R. B. v. Pappas & Co., 9 Cir., 1953, 203 F.2d 569. To the same effect is N. L. R. B. v. Giustina Bros. Lumber Co., 9 Cir., 1958, 253 F.2d 371 where an issue as to whether

certain picketing violated section 8(d) of the Act was abandoned before the Board and later attempted to be raised in this court. See also the Board's regulation stating that: "No matter not included in a statement of exceptions may thereafter be urged before the Board, or in any further proceedings." 29 C.F.R. § 102.46(b) (1949).

Union having consented to a decree restraining it from picketing for a security agreement and Union having failed to make any objection to the finding by the examiner and a recommendation that it be restrained from picketing to enforce exclusive recognition leaves us no other choice than to sustain the order of the Board as far as it respects picketing. We need not consider whether there was a violation of any other sections with respect to the picketing. The order of the Board as far as it relates to the restraint of picketing by Union will be enforced.

■ There remains for consideration the finding of the Board that the action of Union in including Alloy in its "We Do Not Patronize" list and by urging others not to do business with Alloy exercised restraint and coerced Alloy's employees. The trial examiner had found that such activities were not prohibited. The Board did not adopt that finding. We are required to consider this action of the Board because Alloy filed objections to the findings of the examiner on these issues.

We are not in accord with the Board's action in reversing the examiner. We think he reached the correct conclusion and are so impressed with his reasoning that we quote a portion of what he said: "When invited or urged to join a union an employee may pause to reflect upon the advantages or disadvantages inherent in his choice. Alloy's employees have considered the question and have decided that they prefer not to have representa-

tion. As in all such decisions self interest has its play. Workers sometimes, at least, join unions because they hope to gain some economic benefit and sometimes are deterred from doing so by comparable considerations. It is true that business operations employing union labor will be preferred by some customers and avoided by others solely upon the basis of that factor. This circumstance operates to benefit employees or not to depending upon the choice made in relation to the predilections of their employer's clientele. Because their employer's business may be affected by such a choice it follows that the employees themselves have an economic stake in the reaction of customers to their designation of a bargaining representative or refusal to do so. So it may well be said that the selection of a union representative is often or perhaps always made in a climate not entirely free from elements which have a coercive quality. These elements are a part of the very fabric of industrial and commercial life quite beyond the reach of any conceivable statutory remedy. I do not doubt the right of the Respondent to publicize by appropriate means the fact that Alloy's employees are not represented by a union and even to persuade others by peaceful and truthful propaganda not to patronize Alloy for that reason if the persuasion is attempted to be accomplished by no more than the expression of 'views, argument, or opinion'." [1]

"I do not understand that publication of the 'We Do Not Patronize' list is more than the expression of an opinion and I would place the requests of business organizations that they not patronize Alloy in the same category."

We consider the conduct of Union of listing and persuasion, excepting picketing, to be within the general area of protection of the 1st amendment guarantying freedom of speech. These aspects

---

1. § 8(c) of the Act reads: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

are more protected than picketing which although within said area, "exert influences, and produces consequences different from other modes of communication." Hughes v. Superior Court, 1950, 339 U.S. 460, 465, 70 S.Ct. 718, 721, 94 L.Ed. 985. In order to adopt the Board's finding as to the illegality of Union's action now under consideration, we would need a clearer mandate from Congress than the general terminology of the applicable statutes. If such a mandate be given, it then would be the time to consider any constitutional questions raised.

The order of the Board is ordered enforced to the extent that it prohibits picketing and set aside in so far as it prohibits listing of Alloy on the "We Do Not Patronize" list and the importuning of customers not to patronize Alloy.