[S.F. No. 22791. In Bank. Apr. 15, 1971.]

UNITED FARM WORKERS ORGANIZING COMMITTEE,
AFL-CIO, et al., Petitioners, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
BUD ANTLE, INC., Real Party in Interest.

558

---

**COUNSEL**

Cohen, Farnsworth, Denison & Carder and William H. Carder for Petitioners.

Louis Garcia, Robert Gonzales, Mario Obledo, Alan Exelrod, Michael Mendelson and Joe Ortega as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Titchell, Maltzman & Mark, Haskell Titchell, Richard D. Maltzman, Philip B. Bass and Douglas J. Morgan for Real Party in Interest.

---

**OPINION**

**BURKE, J.**—Petitioners are the United Farm Workers Organizing Committee ("UFWOC"), and its two principal officers, Cesar Chavez ("Chavez"), and Dolores Huerta ("Huerta"). By this proceeding they seek a writ of prohibition restraining respondent court from enforcing, by contempt proceedings or otherwise, the provisions of a preliminary injunction issued by respondent on October 8, 1970. We have concluded that enforcement of a substantial portion of the preliminary injunction would violate petitioners' constitutional rights of free speech and that a peremptory writ should issue accordingly.

Real party in interest Bud Antle, Inc. ("Antle"), is engaged in the growing, harvesting, and shipping of various agricultural products. Since 1961, Antle has been a signatory to various collective bargaining agreements entered into with the General Teamsters, Warehousemen and Helpers Union, Local 890 ("Teamsters"), covering a number of categories of Antle's employees. On July 16, 1970, Antle and Teamsters executed a collective bargaining agreement which, for the first time, cov-

ered Antle's agricultural field workers.[1] On or about August 19, 1970, petitioner Huerta approached officials of Antle and requested that UFWOC be recognized as the bargaining agent for Antle's agricultural workers. When this request was rejected by Antle, petitioners called a strike and established picket lines at various of Antle's agricultural operations.

On August 24, Antle filed an action against petitioners alleging, inter alia, that the strike and picketing activities violated the provisions of the California Jurisdictional Strike Act. (Lab. Code, §§ 1115-1120.)[2] On September 14, respondent court granted Antle's application for a preliminary injunction prohibiting petitioners from engaging in strikes, work stoppages or picketing at any of its agricultural operations. Petitioners do not here challenge the provisions of that injunction and it is not involved in this proceeding.

On September 21, 1970, an unfair labor practice charge was filed by another Salinas Valley agricultural employer alleging that UFWOC, by engaging in secondary boycott activities directed against Antle and several other agricultural employers, had violated section 8, subdivision (b), subsection (4) of the National Labor Relations Act.[3] On October 19, the Regional Director of the National Labor Relations Board notified the complainant of his decision not to issue a complaint, on the ground that UFWOC is not a "labor organization" within the meaning of the Act,[4] because it represents only agricultural laborers who are specifically exempted from the coverage of the Act.[5] The complainant in that action has taken an appeal to the general

---

[1]Workers covered for the first time were those engaged in hoeing and thinning, irrigating, and tractor driving work. Prior to 1970, other agreements between Antle and Teamsters did cover a number of categories of employees often subsumed under the generic label "agricultural workers." The employees so covered were categorized by Antle as "harvesting workers."

[2]In this proceeding petitioners do not attack the validity of the Antle-Teamster contract, nor do they assert that their dispute with Antle predated the execution of the Teamsters contract. Were this latter contention made and found to be true, it is likely that the dispute would not be a jurisdictional dispute within the meaning of Labor Code section 1118. (*Smyrniotis* v. *Local Joint Executive Bd.* (1966) 64 Cal.2d 30 [48 Cal.Rptr. 725, 409 P.2d 949].)

[3]29 U.S.C. section 158(b)(4). The basic federal law on the subject of labor-management relations is the National Labor Relations Act (the Wagner Act) of 1935. Since that date, the Congress has enacted two laws substantially amending the provisions of the Wagner Act—the Labor Management Relations Act of 1947 (the Taft-Hartley Act), and the Labor-Management Reporting and Disclosure Act of 1959 (the Landrum-Griffin Act). For ease of reference, the legislation, in toto, will be referred to as "the Act" or the National Labor Relations Act, and pertinent sections will be cited accordingly.

[4]29 U.S.C. section 152, subdivision (5).

[5]29 U.S.C. section 152, subdivision (3).

counsel of the N.L.R.B., in which appeal Antle has joined. The disposition, if any, of that appeal does not appear in the record herein.

Meanwhile, on September 25, Antle filed a supplemental complaint, alleging, inter alia, that petitioners "wrongfully and unlawfully instituted a boycott against plaintiff's agricultural products ordering pickets to be placed at and around various grocery stores and other businesses selling plaintiff's products, throughout the State of California and the United States urging the patrons of such stores not to buy products bearing plaintiff's trade name." An order to show cause was issued on that date and, on October 8, 1970, respondent court issued a second preliminary injunction, in part prohibitory and in part mandatory, which provides in substance that (1) Petitioners are enjoined from publicizing that Antle is engaged in a labor dispute; (2) Petitioners are enjoined from publicizing that Antle's employees are not represented by a labor organization; (3) Petitioners are enjoined from in any way boycotting Antle's products; (4) Petitioners are required to do anything reasonably required to ensure the cessation of boycott activities by members of UFWOC; (5) Petitioner Chavez is required to notify in writing all responsible personnel that all boycott activities against Antle must cease, and to file a copy of such writing with respondent court.[6]

---

[6]The specific language of the injunction is as follows:

"IT IS HEREBY ORDERED THAT:

"A. *Preliminary Prohibitory Injunction*

"Subject to the limitations specified at subparagraph C and D and during the pendency of this action, defendants, and each of them, and all officers, directors, agents, members, employees, and attorneys of defendants, or any of them, and all persons acting in concert with them, or any of them, are enjoined and restrained from doing or causing or attempting or threatening to do or cause, either directly or indirectly, by any manner, method, or device whatsoever, any concerted interference with plaintiff's operation or business, arising out of defendants' demand that United Farm Workers Organizing Committee, AFL-CIO, be recognized by plaintiff as having the exclusive right to bargain collectively with plaintiff on behalf of plaintiff's employees, or any of them, or arising out of a controversy between the United Farm Workers Organizing Committee, AFL-CIO, and the General Teamsters, Warehousemen and Helpers Union, Local 890, or any other labor organization as defined in Labor Code Section 1118, as to which of them has or should have the exclusive right to have its members perform work for plaintiff. Such concerted interference with plaintiff's operation or business shall be understood to include the following:

"(1) *Publicizing that Plaintiff is Engaged in a Labor Dispute*

"In any way promulgating or advertising that a labor dispute exists between plaintiff and defendant United Farm Workers Organizing Committee, AFL-CIO, with respect to any employees of plaintiff engaged in any one or more of the following activities: (i) Field harvesting of wrapped lettuce; (ii) Field harvesting of naked lettuce; (iii) Field harvesting of celery; (iv) Operation of tractors; (v) Irrigation work; (vi) Hoeing and thinning; (vii) Artichoke farming; or (viii) Field harvesting of artichokes.

The preliminary injunction also provides, however, that nothing in it shall be construed as "enjoining conduct which reasonably could be construed to be an unfair labor practice under 8, subdivision (b), subsection (4) of the Labor

"(2) *Publicizing that Plaintiff's Employees are not Represented by a Labor Organization*

"In any way promulgating or advertising that plaintiff's products are not farmed, harvested, packed and/or shipped by represented union personnel or that plaintiff's field workers are not represented by a bona fide labor organization.

"(3) *Boycotting Plaintiff's Products*

"Urging, encouraging, or recommending, or asking any other persons to urge, encourage or recommend, that any customer of plaintiff's boycott plaintiff's agricultural products, or that persons patronizing plaintiff's customers or stores purchasing from plaintiff's customers refrain from purchasing plaintiff's products, or purchase products produced by others rather than the products of plaintiff.

"B. *Preliminary Mandatory Injunction*

"Defendants UFWOC and Cesar Chavez restore the status quo as the same existed prior to the events described in plaintiff's supplemental complaint on file herein; and that

"(1) Defendants do all things that may reasonably be required within the organizational framework of UFWOC to ensure that all members of UFWOC cease conducting, directly or indirectly, any form of boycott activities against any products produced and sold by plaintiff;

"(2) Such boycott activities as have already been instituted by said defendants do not and shall not apply to any agricultural products produced and sold by plaintiff (which include, among others, those sold under the brand names of Bud, Rick, Anco, Jade, and Cellopak).

"(3) Defendants UFWOC and Cesar Chavez shall, within 120 hours (5 days) of the date of personal service of a copy of this Preliminary Injunction on it or him; or within 120 hours of the date that plaintiff or this Court mails notice of the granting of this Preliminary Injunction to the attorneys of record for the defendants and Chavez, notify all UFWOC personnel known by defendants or Chavez to be generally in charge of such boycotting of plaintiff's products in the various localities, to cease such boycotting wherever it may be taking place, whether within the State of California, or elsewhere.

"Such notification referred to in the last paragraph shall be in writing or printing, and copies of such notification, showing date of such notification and to whom sent, or upon whom served, shall be filed with the Clerk of this Court, within three weeks of the date of such sending or serving.

"C. *Only Acts Relating to Jurisdictional Disputes to be Enjoined.*

"The preceding injunctions shall apply only to activities directly or indirectly related to attempts by defendants United Farm Workers Organizing Committee, AFL-CIO, and all persons acting in concert with said defendants, to have the exclusive right to bargain collectively with plaintiff on behalf of plaintiff's employees, or any of them, engaged in any one or more of the following categories of agricultural field work: (i) Field harvesting of wrapped lettuce; (ii) Field harvesting of naked lettuce; (iii) Field harvesting of celery; (iv) Operation of tractors; (v) Irrigation work; (vi) Transplanting work; (vii) Hoeing and thinning work; (viii) Artichoke farming; and (ix) Field harvesting of artichokes; or to urge that United Farm Workers Organizing Committee, AFL-CIO should have the exclusive right to have its members perform work for plaintiff, in any one or more of said categories of agricultural field labor work.

"D. *Collective Bargaining, Employee Organizing, and Personnel Requests to Join UFWOC Not Enjoined*

"The preceding injunctions shall not be construed so as to interfere with collective

Management Relations Act of 1947, as amended by the Labor Management Reporting and Disclosure Act of 1959 . . . ." The injunction then specifies that the following described conduct is *not* within the purview of section 8, subdivision (b), subsection (4): "(1) Handbilling to advertize [*sic*] that a labor dispute exists between plaintiff and defendant UFWOC unless the same has the effect of inducing any individual employed by any person other than plaintiff in the course of his employment to refuse to pick up, deliver or transport any goods, or not to perform any services, at the establishment of the employer other than plaintiff engaged in distribution of plaintiff's products. (2) Picketing, handbilling, or advertising to encourage consumers of plaintiff's products not to buy such products, or to buy the products of producers other than plaintiff."

On November 9, petitioners filed a notice of appeal from the preliminary injunction entered on October 8. Respondent, on November 17, issued an order specifying that petitioners' appeal would not stay the enforcement of the injunction unless petitioners filed an undertaking in the sum of two million dollars. On the same day, respondent issued an order to show cause directed to petitioners Chavez and UFWOC, requiring them to appear on December 4 and show cause why they should not be held in contempt of court for failing to comply with the provisions of the October 8 injunction. On December 4 the hearing was held and UFWOC was fined $1,000 for violation of the prohibitory provisions of the injunction. Chavez was sentenced to and served five days in jail for violation of the prohibitory provisions of the injunction, and was further ordered to remain in jail until such time as he agreed to comply with the mandatory provisions of the injunction.

In light of the serious constitutional issues raised by petitioners, we issued an alternative writ of prohibition, staying enforcement of all provisions of the injunction except that which prohibits petitioners from representing that Antle's employees are not represented by a labor organization, and ordering Chavez released on his own recognizance.[7]

Petitioners challenge the validity of the injunction on two distinct

bargaining, or to prohibit any individual voluntarily becoming or remaining a member of defendant United Farm Workers Organizing Committee, AFL-CIO, or any other labor organization, or from personally requesting any other individual to join said defendant or any other labor organization. . . ."

[7]Prohibition is an appropriate remedy to enjoin the enforcement of a preliminary injunction alleged to be unconstitutional. (*Evans* v. *Superior Court* (1939) 14 Cal.2d 563 [96 P.2d 107].) Petitioners' assertion—unchallenged when the petition for a writ was filed—that they are unable to post a bond in the amount required by respondent court is sufficient to establish the inadequacy of their remedy at law, i.e., an appeal from the injunction. *Woods-Drury, Inc.* v. *Superior Court* (1936) 18 Cal.App.2d 340 [63 P.2d 1184] (hg. den.). (See 3 Witkin, Cal. Procedure (1967 Supp.) pp. 1049-1050.)

grounds: First, they allege that the activities restrained by respondent are arguably subject to regulation under sections 7 or 8 of the Act[8] and, hence, within the exclusive jurisdiction of the National Labor Relations Board;[9] second, petitioners contend that the provisions of the injunction infringe upon their rights of free speech and the injunction is, therefore, unconstitutional under the First and Fourteenth Amendments to the federal Constitution. We have concluded that the jurisdiction of respondent court is not preempted by federal law, but that the injunction is, in major part, overly broad and violative of petitioners' First Amendment rights.

■■ Turning first to petitioners' contention that jurisdiction has been preempted, we note that it is well settled that if the activity restrained by respondent is subject to regulation under the Act, state court jurisdiction is preempted.[10] And even though the conduct in question is not clearly so subject, if it is arguably within the scope of the jurisdiction of the National Labor Relations Board, the state courts must defer to the jurisdiction of the board.[11] Here petitioners place substantial reliance on the fact that unfair labor practices were alleged in a charge filed with the regional director. But as we have noted above, the director refused to issue a complaint in the matter. We deem it of no consequence that the charging party has chosen to appeal that decision,[12] since the bare assertion by an interested party that certain conduct is within the scope of the Act is obviously insufficient to oust a state court of jurisdiction. Petitioners' contention must

---

[8] 29 U.S.C. section 157; 29 U.S.C. section 158.

[9] *San Diego Bldg. Trades Council* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773]; see *Liner* v. *Jafco, Inc.* (1964) 375 U.S. 301 [11 L.Ed.2d 347, 84 S.Ct. 391]; *La Crosse Telephone Corp.* v. *Wisconsin Employment Relations Board* (1949) 336 U.S. 18 [93 L.Ed. 463, 69 S.Ct. 379]; *Auto Workers* v. *Wisconsin Employment Relations Board* (1949) 336 U.S. 245 [93 L.Ed. 651, 69 S.Ct. 516].

[10] *San Diego Bldg. Trades Council* v. *Garmon, supra,* 359 U.S. 236.

[11] *Liner* v. *Jafco, Inc., supra,* 375 U.S. 301. It is noteworthy that in the overwhelming bulk of cases cited in support of this proposition, there was no question but that interstate commerce was affected and the parties to the dispute were not exempted from the provisions of the Act. The matter in question in those cases was the appropriate characterization of the specific activity alleged to be within the jurisdiction of the National Labor Relations Board (See, e.g., in addition to cases cited in fn. 9, *ante, Algoma Plywood* v. *Wisconsin Employment Relations Board* (1949) 336 U.S. 301 [93 L.Ed. 691, 69 S.Ct. 584]; *J. J. Newberry Co.* v. *Retail Clerks International Ass'n.* (1956) 78 Idaho 85 [298 P.2d 375] (revd. per curiam (1957) 352 U.S. 987 [1 L.Ed.2d 367, 77 S.Ct. 386]).)

[12] As we have also noted (p. 561 *ante*), the disposition of that appeal does not appear in the record herein. However, a similar appeal was denied by the General Counsel of the National Labor Relations Board in June 1969, on the ground that UFWOC was not a labor organization within the meaning of the Act, and that there was insufficient evidence to demonstrate that it was acting as the agent of a labor organization.

therefore stand or fall on UFWOC's being either a "labor organization" or the agent of a labor organization, within the meaning of the Act.

For purposes of the Act, a "labor organization" is defined in section 2, subdivision (5), of the Act, as an organization "in which employees participate and which exists for [certain enumerated purposes]."[13] The term "employee" is defined in section 2, subdivision (3), of the Act specifically to exclude "any individual employed as an agricultural laborer."[14] Petitioners concede that UFWOC represents only agricultural laborers and, therefore, is not a "labor organization," but they contend that since section 8, subdivision (b), subsection (4), of the Act[15] prohibits unfair labor practices by a labor organization "or its agents," they are arguably subject to the provisions of the Act, as "agents" of the AFL-CIO.

The AFL-CIO is a "labor organization" for purposes of the Act.[16] Hence, if UFWOC were acting as the agent of the AFL-CIO in engaging in the activities in question, it might well come within the cited provisions.[17] Nowhere, though, is there an allegation of any facts on which such agency might be predicated; indeed, there is not even to be found a conclusionary allegation of agency. Nor is it alleged that UFWOC represents both agricultural and nonagricultural workers, in which case it would not likely be exempt from the Act.[18] In short, we conclude, as did the regional director, that the cited exclusion plainly applies to UFWOC and that respondent court therefore had jurisdiction to hear the complaint filed by Antle.

Turning then to the contention that the provisions of the injunction are violative of petitioners' First Amendment rights, we review briefly the history of the California Jurisdictional Strike Act (Lab. Code, §§ 1115-1120) under the terms of which the challenged injunction was issued. The heart of the legislation, which was enacted in 1947, is Labor Code section 1118,

[13]29 U.S.C. section 152, subdivision (5).

[14]29 U.S.C. section 152, subdivision (3).

[15]29 U.S.C. section 158, subdivision (b), subsection (4).

[16]*National Labor Relations Board* v. *Highland Park Mfg. Co.* (1951) 340 U.S. 927 [95 L.Ed. 669, 71 S.Ct. 489].

[17]*Ibid; Le Baron* v. *Kern County Farm Labor Union* (S.D.Cal. 1948) 80 F. Supp. 151.

[18]*Waialua Agr. Co.* v. *United Sugar Workers* (D. Hawaii 1958) 114 F.Supp. 243. It is settled that an organization composed entirely of agricultural laborers is not included in the coverage of the Act. *Di Giorgio Fruit Corp.* v. *National Labor Relations Board* (1951) 191 F.2d 642 [89 App.D.C. 155, 28 A.L.R.2d 377] (cert. den. (1951) 342 U.S. 869 [96 L.Ed. 653, 72 S.Ct. 110]). It thus seems clear that under the facts alleged, the instant case is one which, on the basis of published decisions, the National Labor Relations Board would not hear. (Cf. *Russell* v. *Electrical Workers Local 569* (1966) 64 Cal.2d 22 [48 Cal.Rptr. 702, 409 P.2d 926].)

which defines a jurisdictional strike as "a concerted refusal to perform work for an employer or any other concerted interference with an employer's operation or business, arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to bargain collectively with an employer on behalf of his employees, or any of them, or arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to have its members perform work for an employer."[19]

In 1953, the Jurisdictional Strike Act was held constitutional against a contention that the prohibition of peaceful picketing violated the constitutional right of free speech. (*Seven Up etc. Co.* v. *Grocery etc. Union* (1953) 40 Cal.2d 368 [254 P.2d 544, 33 A.L.R.2d 327] (revd. on other grounds) (1959) 359 U.S. 434 [3 L.Ed.2d 931, 79 S.Ct. 939].) Specifically, *Seven Up* held that the state may constitutionally enjoin picketing for purposes declared to be illegal or contrary to public policy. However, *Seven Up* and its two companion cases (*Voeltz* v. *Bakery etc. Union* (1953) 40 Cal.2d 382 [254 P.2d 553]; *Sommer* v. *Metal Trades Council* (1953) 40 Cal.2d 392 [254 P.2d 559]), shed little light on the extent to which the Act was intended to be, or may be enforced against conduct other than picketing.

In *Seven Up,* the court's discussion of the free speech aspects of the case was limited to a defense of regulation of picketing. (40 Cal.2d at pp. 373-380.) In *Voeltz* v. *Bakery etc. Union, supra,* 40 Cal.2d 382, defendants were enjoined from picketing, calling a strike, and threatening to picket to enforce secondary boycotts. And in *Sommer* v. *Metal Trades Council, supra,* 40 Cal.2d 392, defendants were engaged in picketing and secondary boycott activities. Although the specifics of the latter were not set forth in the opinion, they were viewed by the court as "coercive activity" (see *id.* at p. 401). In none of those cases was a consumer (as opposed to a secondary) boycott involved, nor was the court faced with the need to define the concept of "coercive" activity, or to establish limits beyond which the Act could not constitutionally be employed. Those cases, therefore, stand for the proposition (1) that peaceful picketing for purposes declared to be illegal or contrary to the public policy of the state may be enjoined, under some circumstances, and (2) that some forms of activity other than picketing may be enjoinable, if the activity is coercive.

---

[19]The jurisdictional Strike Act thus prohibits what are more appropriately termed "representational disputes"— i.e., disputes over which union should have the right to bargain collectively with the employer, as well as "work assignment disputes"—i.e., disputes over which union has the right to specific work on, for example, a construction project. It is only the former type of dispute which is at issue in the present proceedings. (See generally Aaron, *The California Jurisdictional Strike Act* (1954) 27 So.Cal.L.Rev. 237.)

One reported appellate decision appears to have gone further in enjoining specific activity,[20] but several trial courts have held that the Act could not be applied to conduct other than picketing unless such conduct was accompanied by some element of coercion.[21] The question, therefore, of what "other concerted interference with an employer's operation or business"[22] may be properly enjoined has not been conclusively established.

The United States Supreme Court, in the landmark cases of *Thornhill* v. *Alabama* (1940) 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736], and *Carlson* v. *California* (1940) 310 U.S. 106 [84 L.Ed. 1104, 60 S.Ct. 746], established the applicability of the First Amendment to picketing and other forms of activity in connection with a labor dispute. ▮ In the language of the court, "publicizing the facts of a labor dispute in a peaceful way through appropriate means . . . must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a State." (*Carlson* v. *California, supra,* p. 113 [84 L.Ed. p. 1108].) Eventually, "the broad pronouncements, but not the specific holding of *Thornhill* [yielded] 'to the impact of facts unseen' or at least not sufficiently appreciated." (*Teamsters Union* v. *Vogt, Inc.* (1956) 354 U.S. 284, 289 [1 L.Ed.2d 1347, 1351, 77 S.Ct. 1166].) As a result, the court engaged in a more refined effort to define "the power of the State to set the limits of permissible contest open to industrial combatants." (*Thornhill* v. *Alabama, supra,* p. 104 [84 L.Ed. p. 1103].)

▮ That those limits include the power to enjoin peaceful picketing for purposes violative of state laws or public policy was made clear in *Hughes* v. *Superior Court* (1949) 339 U.S. 460 [94 L.Ed. 985, 70 S.Ct. 718], affg. 32 Cal.2d 850 [198 P.2d 885]. In *Hughes,* this court suspended an injunction banning picketing to secure compliance with a demand for racial

---

[20]In *Globe Dairy Lunch Co.* v. *Joint Culinary Workers* (1953) 117 Cal.App.2d 190 [255 P.2d 94] (hg. den.) (decided shortly after *Seven Up* and its companion cases), the court upheld a preliminary injunction restraining defendants from picketing and also restraining them from circulating "unfair" and "we do not patronize" lists on which plaintiff's name had been placed. (But cf. *N.L.R.B.* v. *International Assn. of Machinists, etc.* (9th Cir. 1959) 263 F.2d 796; cert. den. (1966) 362 U.S. 940 [4 L.Ed.2d 769, 80 S.Ct. 803].) In so doing, the court relied on *In re Kelleher* (1953) 40 Cal.2d 424 [254 P.2d 572], and *Isthmian S.S. Co.* v. *National etc. Association* (1953) 40 Cal.2d 433 [254 P.2d 578]. However neither of those decisions involved anything other than picketing and, hence, cannot be said to support more than the propositions stated in the text.

[21]E.g., *Robbins* v. *Long Beach Allied Printing Trades Council* (1951) 24 C.C.H. Lab. Cases, Par. 67894 (L. A. Super. Court). See cases cited in Aaron, *The California Jurisdictional Strike Act, supra,* footnote 15, at pages 246-247. Cf. *Corrigan* v. *Barbers & Beauticians Union* (1967) 251 Cal.App.2d 490 [59 Cal.Rptr. 533].

[22]That is, activity other than a concerted refusal to work.

quota hiring. In affirming that decision, the court discussed the special characteristics of picketing as "more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. . . . The loyalties and responses evoked and exacted by picket lines are unlike those flowing from the printed word." (*Hughes* v. *Superior Court, supra,* p. 465 [94 L.Ed. p. 992].)[23] Thus, it is apparent that the more limited protection given picketing as a concomitant of free speech is predicated on the dual nature of the activity and the fact that, of itself, picketing (i.e., patrolling a particular locality) has a certain coercive aspect. Yet even with respect to picketing, there must be alternative means available for making known a grievance if the activity is to be enjoined. (See *Bakery Drivers Local* v. *Wohl* (1942) 315 U.S. 769 [86 L.Ed. 1178, 62 S.Ct. 816].)

In *Bakery Drivers Local* v. *Wohl, supra,* 315 U.S. 769, 775 [86 L.Ed. 1184], the court, in holding the provisions of an injunction against picketing to be an unconstitutional invasion of the right of free speech, laid great stress on the fact that, although "A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual," nevertheless "respondents' mobility and their insulation from the public as middlemen made it practically impossible for petitioners to make known their legitimate grievances to the public whose patronage was sustaining the . . . system." Similar considerations impelled this court, in *Park & T. I. Corp.* v. *Int. etc. of Teamsters* (1946) 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426], to modify the broad provisions of an injunction which precluded a rejected union from attempting to persuade employees and the public of the legitimacy of its grievances. As we then said, "In seeking to enjoin defendants' lawful activities plaintiff in effect asks this court to preclude any possibility that public sentiment will crystallize in favor of a closed shop in plaintiff's business. The court could not do so without denying to defendants their constitutional right of freedom of speech. [Citations.]" (*Park & T. I. Corp.* v. *Int. etc. of Teamsters, supra,* p. 608.)

In the leading case of *National Labor Relations Board* v. *Fruit & Vegetable Packers & Warehousemen* (1968) 377 U.S. 58 [12 L.Ed.2d 129, 84 S.Ct. 1063] ("Tree Fruits"), the court held that picketing in support of a consumer boycott was protected activity under the so-called "publicity proviso" of section 8, subdivision (b), subsection (4) of the Act. In *Tree*

---

[23]See also *Building Service Union* v. *Gazzam* (1949) 339 U.S. 532 [94 L.Ed. 1045, 70 S.Ct. 784]; *National Labor Relations Board* v. *International Brotherhood of Electrical Workers* (2d Cir. 1964) 339 F.2d 600; *Joint Local Board* v. *Sperry* (8th Cir. 1963) 323 F.2d 75, 79.

*Fruits,* the Teamsters Union had a dispute with certain growers of Washington State apples. The union stationed pickets outside certain retail grocery stores, carrying placards which importuned the customers not to purchase the struck product—i.e., Washington State apples. It was made clear on the placard that the Teamsters had no dispute with any store or market. This distinction—between merely following the struck product and attempting to force a cessation of all purchases from the picketed establishment—was emphasized in the court's opinion.[24] Similarly, in the case before us, petitioners' efforts are not directed at those establishments which serve as the situs for some of the challenged activity—rather, those efforts are directed to following the "struck product"—i.e., the agricultural products of Antle. Such activity obviously does not have the same coercive effect as a secondary boycott of all stores dealing with Antle.[25]

Section 8, subdivision (b), subsection (4), protected "publicity other than picketing for the purpose of truthfully advising the public" that a dispute existed between an employer and a union. In construing the language as it did, the court was extremely cognizant of the difficult constitutional questions which would have been raised had the section precluded peaceful picketing in the circumstances of a consumer boycott. (377 U.S. at pp. 63, 69 [12 L.Ed.2d at pp. 133, 137].) Mr. Justice Black concurred specially on the ground that, in his view, the statute did preclude peaceful picketing in support of a consumer boycott and, so construed, was unconstitutional (377 U.S. 58, 76 [12 L.Ed.2d 129, 141], Black, J., concurring). And even Justice Harlan's dissent, in which Justice Stewart concurred, laid great stress on the "discriminating eye" with which Congress had prohibited certain picketing, in asserting the constitutionality of the proviso. "The decision of Congress to prohibit secondary consumer picketing during labor disputes is, I believe, not inconsistent with the protections of the First Amendment, *particularly when, as here, other methods of communication are left open.*" (Italics added; 377 U.S. 58, 80, 93 [12 L.Ed.2d 129, 143, 150], Harlan, J., dissenting.) That such serious constitutional doubts were asserted not only by the court, but also by the Senate (see *id.* at p. 69 [12 L.Ed.2d at p. 137]) is not, we think, without significance in considering petitioners' constitutional challenge to the injunction issued in the case at bench.

Judicial efforts to circumscribe the legitimate activities of industrial combatants have thus been a response to more than abstract questions involving the right to speak freely; they have taken into account, whether

---

[24] 377 U.S. at pp. 63-64 [12 L.Ed.2d at pp. 133-134].

[25] As we shall point out (p. 572, *post*), to the extent that petitioners' activity involves a secondary boycott, we believe it to be properly enjoinable.

overtly or tacitly, the unique problems involved when freedom of expression is so intimately entwined with economic effects and the shifting economic balance of power. ■ So although we have seen that activities may be circumscribed, nonetheless, we believe that "An order issued in the area of First Amendment Rights must be couched in the narrowest terms that will accomplish the pinpointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field the State may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' [Citations.]" (*Carroll* v. *President & Commissioners of Princess Anne* (1968) 393 U.S. 175, 183-184 [21 L.Ed.2d 325, 332-333, 89 S.Ct. 347].) And, in another context, we have recently reaffirmed the primacy of First Amendment freedoms when their exercise conflicts with other legitimate and well recognized property rights. (*Diamond* v. *Bland* (1970) 3 Cal.3d 653 [91 Cal.Rptr. 501, 477 P.2d 733].)

Instructive on the constitutionally permissible breadth of an injunction which touches on First Amendment rights is the recent case of *In re Berry* (1968) 68 Cal.2d 137 [65 Cal.Rptr. 273, 436 P.2d 273]. There, certain persons were arrested for picketing in support of the demands of a social workers union. This court assumed that the state could lawfully prohibit strikes by public employees, but held that the injunction which petitioners had been charged with violating was both unconstitutionally vague and overbroad. As we there pointed out "Other language in the order compounds the effect of the indicated intrusion into the area of protected expression. Section (4) forbids 'inducing others to participate' in demonstrations. Section (3) forbids 'inducing or calling a strike, work stoppage or *other concerted activity*' against the County. It is clear that this language is broad enough to include the distribution of literature, the circulation of petitions, the publication of articles, and much other Union activity in connection with its grievances against the County. Even if we assume, as we have done above, that all such activity would be properly enjoinable insofar as it advocated a strike by public employees, still a vast area of constitutionally protected activity falls within the wide reach of the ban." (*In re Berry, supra,* 68 Cal.2d 137, 154.)

■ Turning to the specific injunction issued by respondent court, we believe that, like the injunction issued in *In re Berry,* it brushes with too broad a stroke to be sustained. As noted above,[26] the injunction prohibits petitioners from "in any way promulgating or advertising" that a dispute exists; it precludes petitioners from "urging, encouraging, or recommending,

---

[26]Footnote 6, *ante.*

or asking any other persons to urge, encourage or recommend, that any customer of plaintiff's boycott plaintiff's agricultural products"; it effectively enjoins petitioners from making any appeal whatever to the consuming public to purchase the products of Antle's competitors.

Antle contends that such activities are enjoined only to the extent that they have as their purpose the execution of a collective bargaining agreement between petitioners and Antle. It is true, of course, that a theoretical distinction exists between publicity which is solely intended to inform the public of certain alleged inadequacies in the conduct of a business, and publicity which has a further purpose—e.g., to persuade the employer to recognize the labor organization conducting the campaign. Such a distinction has been utilized to enjoin *picketing* for the purpose of forcing an employer to bargain with a specific union, while allowing picketing which has as its purpose the truthful dissemination of information concerning working conditions. (*Corrigan* v. *Barbers & Beauticians Union, supra,* 251 Cal.App.2d 490.) Whatever merit such a distinction has in the context of picketing,[27] we are persuaded that a state may not constitutionally enjoin other noncoercive truthful efforts to communicate the facts of a labor dispute to the public.

 We therefore believe that the injunction at issue is too broad to withstand the constitutional challenge mounted by petitioners.[28] Petitioners may properly be enjoined from making false and untruthful statements in connection with a labor dispute. (*Magill Bros.* v. *Bldg. Service etc. Union* (1942) 20 Cal.2d 506 [127 P.2d 542]; *Globe D. Lunch* v. *Joint Culinary Wkrs.* (1953) 117 Cal.App.2d 190 [255 P.2d 94] (hg. den.).) But the application of the Jurisdictional Strike Act to other activities enjoined by respondent court suffers from the same fatal defect noted in *Bakery Drivers* v. *Wohl, supra,* 315 U.S. 769, and *Tree Fruits, supra.* That is, it effectively precludes petitioners in any effective manner, from informing the general public of the nature of their dispute with Antle. We deem it of significance in this connection that, unlike the federal Act, there is no provision in the Labor Code for certification of a union and all the concomitant protections offered both employer and union. Hence, for aught that appears, none of

---

[27]It may well be thought that, except in extreme cases, such a distinction is more chimerical than real.

[28]*Adams Dairy* v. *Burke* (Mo. 1956) 293 S.W.2d 281 (cert. den. (1957) 352 U.S. 969 [1 L.Ed.2d 323, 77 S.Ct. 360]), cited by Antle, deals with a situation in which no injunction had been issued, and holds that certain conduct could be enjoined. The court there was not faced with the specific provisions of an injunction and it is thus not clear whether an injunction such as that issued in the instant case would be upheld partially or in its entirety. To the extent that that opinion can be read to sustain the injunction issued by respondent court, we respectfully decline to follow its reasoning.

Antle's employees may have wanted to be represented by Teamsters.[29] But once a contract is signed, a union effort to challenge the appropriateness of the representative with which the employer has contracted is, for all practical purposes, precluded if the injunction issued by respondent court were valid. In light of these considerations, we hold that peaceful and truthful attempts to persuade the general public not to purchase a specific product or products, unaccompanied by picketing[30] or coercive tactics, is not the "other concerted activity" contemplated by the Jurisdictional Strike Act.[31]

We have also concluded that the language of the injunction—except for that portion enjoining untruthful statements—is not that which would allow the application of the doctrine of severance (see *In re Berry, supra,* 68 Cal.2d 137, 156), to sustain portions of the challenged order.

Let a peremptory writ of prohibition issue restraining respondent court from enforcing, by contempt proceedings or otherwise, all portions of the challenged injunction save that section which enjoins petitioners from representing that Antle's products are not handled by union personnel or that Antle's field workers are not represented by a bona fide union.[32]

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

[29]We, of course, express no opinion on whether a majority of Antle's employees now or ever supported petitioners, Teamsters, or neither of them.

[30]In the briefs and exhibits filed with this court, there was some discussion of violent and coercive tactics alleged to have been employed by petitioners or their agents. Needless to say, nothing in this opinion should be construed as prohibiting a court from enjoining violence, activity which contains threats of injury, violence or reprisals, activity which creates public safety hazards, or activity which obstructs ingress and egress to buildings or stores. Nor should the opinion be read to sanction a secondary, as opposed to a consumer boycott.

[31]For the purposes of this case and in view of the prohibition of the Jurisdictional Strike Act of "concerted interference with an employer's operation of business," "picketing" is defined to mean (1) patrolling, marching, or other concerted interference by persons in a "line" through which customers must pass in order to enter a business establishment, and (2) the carrying by such persons of signs or placards that urge customers, employees or other persons not to cross such "line" or not to patronize such establishment. The communication of a message through the medium of a sign or placard that urges customers of an establishment not to purchase a particular product sold in such establishment does not constitute such "picketing" provided such sign or placard is not carried by persons patrolling or marching in a "line" through which customers must pass in order to enter such establishment.

[32]It is clear that the relief granted in extraordinary writ proceedings can be more limited than that sought. (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559 [212 P.2d 878].)